Brian A. Howie (026021)
brian.howie@quarles.com
**QUARLES & BRADY LLP**
Firm State Bar No. 00443100
One Renaissance Square
Two N. Central Ave.
Phoenix, AZ  85004-2391
Telephone:  (602) 229-5200

Alex M. Weingarten* (CA 204410)
amweingarten@venable.com
Celeste M. Brecht* (CA 238604)
cmbrecht@venable.com
Jeffrey K. Logan* (CA 136962)
jklogan@venable.com
Steven E. Swaney* (CA 221437)
seswaney@venable.com
**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone:  (310) 229-9900

*Attorneys for Plaintiffs*
Xponential Fitness, LLC, AKT Fitness, LLC,
Club Pilates Franchise, LLC,
CycleBar Franchising, LLC, PB Franchising,
LLC, Row House Franchise, LLC,
Stretch Lab Franchise, LLC and Yoga Six
Franchise, LLC

*Pro Hac Vice Forthcoming*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xponential Fitness LLC, et al., <br><br> Plaintiffs, <br> vs. <br><br> The State of Arizona and Douglas A. Ducey, Governor of the State of Arizona, in his official capacity, <br><br> Defendants. | Case No.: 2:20-cv-01310-JZB <br><br> **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (WITH NOTICE)** |

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

STATEMENT OF FACTS ...........................................................................................2

LEGAL STANDARD ...................................................................................................6

ARGUMENT .................................................................................................................6

    I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ............6

        A.    Executive Order 2020-43 Violates Plaintiffs' Due Process
              Rights Under the Fourteenth and Fifth Amendments.......................6

           1.      Executive Order 2020-43 Violates Procedural Due
              Process.............................................................................................7

           2.      Executive Order 2020-43 Violates Substantive Due
              Process.............................................................................................9

           3.      Executive Order 2020-43 Is Impermissibly Vague ........... 10

        B.    Executive Order 2020-43 Violates Plaintiffs' Rights Under the
              Equal Protection Clause of the Fourteenth Amendment .................12

        C.    Executive Order 2020-43 Results in a Taking that Violates
              Plaintiffs' Rights Under the Fifth Amendment................................12

        D.    Executive Order 2020-43 Violates Plaintiffs' Rights Under the
              Contracts Clause .............................................................................13

        E.    Executive Order 2020-43 Violates the Due Process and Equal
              Protections Clauses of the Arizona Constitution .............................14

    II.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT
          IMMEDIATE INJUNCTIVE RELIEF .......................................................14

    III.   THE BALANCE OF EQUITIES FAVOR PLAINTIFFS, AND AN
          INJUNCTION IS IN THE PUBLIC INTEREST .....................................15

    IV.   THE COURT SHOULD DISPENSE WITH ANY BOND
          REQUIREMENT ........................................................................................16

CONCLUSION .........................................................................................................177

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Alliance for Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) .......................................................... 6, 15, 16

*Am. Trucking Assoc., Inc. v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009) ................................................................ 15

*Arizona v. Casey,*
  205 Ariz. 359 (2003) ............................................................................... 14

*Armstrong v. United States,*
  364 U.S. 40 (1960) ................................................................................... 12

*Bible Club v. Placentia-Yorba Linda Sch. Dist.,*
  573 F. Supp. 2d 1291 (C.D. Cal. 2008) ................................................. 16

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,*
  149 F.3d 971 (9th Cir. 1998), *cert. denied*, 526 U.S. 1018 (1999) ........ 6

*Celsis In Vitro, Inc. v. CellzDirect, Inc.,*
  664 F.3d 922 (Fed. Cir. 2012) ................................................................ 15

*Chicanos Por La Causa, Inc. v. Napolitano,*
  558 F.3d 856 (9th Cir. 2009), *aff'd, Chamber of Commerce of U.S. v.
  Whiting*, 563 U.S. 582 (2011) .............................................................. 7, 8

*Cleveland Board of Education v. Loudermill,*
  470 U.S. 532 (1985) ................................................................................... 8

*County of Sacramento v. Lewis,*
  523 U.S. 833 (1998) ................................................................................... 9

*F.C.C. v. Fox Television Stations,*
  567 U.S. 239 (2012) ................................................................................. 10

*Fang Lin Ai v. United States,*
  809 F.3d 503 (9th Cir. 2015) ............................................................ 10, 11

*First English Evangelical Lutheran Church v. County of L.A.,*
  482 U.S. 304 (1987) ................................................................................. 13

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck
  Drivers,*
  415 U.S. 423 (1974) ................................................................................... 6

*Herrington v. Sonoma Cty.,*
  834 F.2d 1488 ............................................................................................. 9

*Jorgensen v. Cassiday,*
  320 F.3d 906 (9th Cir. 2003) .................................................................. 16

ii

*In re Kazas*,
    22 Cal. App. 2d 161 (1937) ................................................................ 8

*Lucas v. S.C. Coastal Council*,
    505 U.S. 1003 (1992) ..................................................................... 12

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .................................................................... 6, 7

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) .................................................. 14, 16

*Nat'l Ass'n of Wheat Growers v. Zeise*,
    309 F. Supp. 3d 842 (E.D. Cal. 2018) ........................................ 16

*Nelson v. Nat'l Aeronautics & Space Admin.*,
    530 F.3d 865 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134
    (2011) ......................................................................................... 14

*Penn Cent. Transp. Co. v. New York City*,
    438 U.S. 104 (1978) ..................................................................... 12

*Romer v. Evans*,
    517 U.S. 620 (1996) .................................................................. 9, 10

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ......................................... 6, 15, 16

*Sveen v. Melin*,
    138 S. Ct. 1815 (2018) ................................................................ 13

*Truax v. Corrigan*,
    257 U.S. 312 (1921) ....................................................................... 7

*Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*,
    24 F.3d 56 (9th Cir. 1994) ............................................................ 7

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .......................................................................... 6

**Statutes**

A.R.S. § 26-317 ............................................................................... 11

Pursuant to Fed. R. Civ. P. 65, Plaintiffs Xponential Fitness LLC, AKT Fitness, LLC, Club Pilates Franchise, LLC, CycleBar Franchising, LLC, PB Franchising, LLC, Row House Franchise, LLC, Stretch Lab Franchise, LLC and Yoga Six Franchise, LLC ("Plaintiffs"), by and through undersigned counsel, file this Motion for a Temporary Restraining Order and Preliminary Injunction, with notice, against the Defendants the State of Arizona and Governor Douglas A. Ducey ("Defendants")..

Plaintiffs request that this Court enjoin Defendants from enforcing Executive Order 2020-43 ("E.O. 2020-43") ordering all indoor gyms and fitness centers to cease operations until at least July 27, 2020. The Executive Order violates procedural and substantive due process rights, equal protection rights, and other rights under the United States and Arizona Constitutions, and Plaintiffs will suffer irreparable harm if the Executive Order is allowed to continue in effect. Therefore, a temporary restraining order is warranted.

This motion is supported by the following memorandum of points and authorities, the supporting declarations attached to this motion, and the separately-filed Request for Judicial Notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The State of Arizona has seen a recent increase in novel coronavirus cases, but rather than taking a considered approach to this problem that relies upon measures scientifically proven to reduce the spread of infection (such as requiring face coverings in public spaces), Governor Doug Ducey issued E.O. 2020-43 reclosing certain businesses—including "indoor gyms and fitness clubs"—while inexplicably allowing most businesses in Arizona to continue operating without additional restrictions. Plaintiffs, who franchise different brands of boutique fitness studios, have thus been entirely deprived of their ability to operate—and to keep more than 750 employees of those studios working and their tens of thousands of Arizona patrons physically and mentally healthy—while businesses such as casinos and big-box liquor stores remain open to the public. E.O. 2020-43, which was issued without notice and without an opportunity for affected businesses to be heard, can

only be described as irrational and arbitrary. The State has set forth no evidence that the recent surge in coronavirus infections is attributable to gyms and fitness studios, or that safety measures previously mandated for those businesses—which Plaintiffs have already implemented at tremendous expense—are insufficient to address the spread of the virus. In fact, there have been no reported cases of an employee or patron contracting COVID-19 at any of Plaintiffs' 1,500+ fitness studios in North America. The Governor's decision to shutter gyms—but not other businesses—has no rational relation to addressing the recent spike in COVID-19 cases.

The coronavirus pandemic requires decisive government action, to be sure; and Plaintiffs are committed to the health and safety of their employees, patrons, and the community at large. But there are proven ways to protect the public while allowing responsible business owners to keep providing critical services and allowing citizens to safely engage in essential daily activities—including physical fitness activities, which are also vital to public health. Unfortunately, E.O. 2020-43 achieves none of these ends; instead of imposing reasonable restrictions tailored to achieve the State's purpose, E.O. 2020-43 indiscriminately singles out Plaintiffs' businesses for indefinite closure without justification. E.O. 2020-43 simply cannot be squared with the due process, equal protection, and other constitutional rights of the individuals and business who will be irreparably harmed by its implementation; citizens cannot be divested of the procedural safeguards and substantive rights guaranteed by the Constitution merely by the stroke of the executive's pen, even during a national health emergency. As a result, Plaintiffs must seek emergency injunctive relief as set forth below.

## STATEMENT OF FACTS

Plaintiff Xponential Fitness LLC ("Xponential") is the curator of several boutique fitness brands focused on Pilates, cycle, dance, rowing, stretch, yoga and other forms of physical exercise services. Declaration of John Meloun (together with Declarations of Melissa Chordock, Shaun Grove, Trevor Lucas, Sarah Luna ("Luna Decl."), Ramon

Castillion, Lou DeFrancisco and Lindsay Junk referred to as "Pl. Decls.")[1] ¶ 3. Through their franchises, which are managed and operated through the other Plaintiffs herein, Xponential's brands operate over 1,500 studios in North America—including 50 studios located in Arizona that employ more than 750 people, provide fitness services to more than 20,000 customers, and generate tens of millions of dollars in revenue. *Id*. ¶¶ 3-4. Plaintiffs' franchises are not "big box" gyms; they are boutique, curated exercise studios that are already limited in size and designed to accommodate only smaller groups of people at a given time. *Id.*

On March 11, 2020, Governor Ducey issued a Declaration of Emergency and Executive Order 2020-07 to provide health officials and administrators with tools and guidance necessary to combat the spread of COVID-19. Request for Judicial Notice ("RJN") Exs. 1-2.[2] The following week, on March 19, 2020, Governor Ducey issued Executive Order 2020-09 closing all bars, movie theaters, and indoor gyms and fitness clubs effective March 20, 2020, until further notice. *Id*. Ex. 3. On March 23, 2020, Governor Ducey issued Executive Order 2020-12 prohibiting the closure of certain businesses and operations deemed "essential." *Id*. Ex. 4. This Order recognized that mental and physical health, exercise, and fitness are essential to the lives of Arizonans and allowed for, among other things, the provision of outdoor recreation activities such walking, hiking, biking, and golfing. *Id.*

On May 12, 2020, nearly two months after Plaintiffs' business had been shuttered by E.O. 2020-09, Governor Ducey issued Executive Order 2020-36 instituting a "Stay Healthy, Return Smarter, Return Stronger" policy allowing businesses to gradually and safely open, effective May 16, 2020. *Id*. Ex. 7. Executive Order 2020-36 provided

---

[1] These eight declarations (and the exhibits thereto) are attached hereto as Exhibit A.

[2] In their separately filed Request for Judicial Notice, Plaintiffs ask the Court to take judicial notice of eleven documents. Those documents are attached as Exhibits 1-11 to that Request and are referred to herein using those exhibit numbers.

specific instructions for gyms and fitness providers to implement to mitigate the spread of COVID-19. *Id.*; *see also* RJN Exs. 8, 9.

Based on Executive Order 2020-36, Plaintiffs' businesses in Arizona began to reopen. Pl. Decls. ¶ 7. In accordance with the policies and guidance provided under Executive Order 2020-36 (*see* RJN Exs. 8, 9), Plaintiffs developed, established, and implemented detailed and comprehensive written policies and procedures based on guidance from the Center for Disease Control and Prevention ("CDC"), the Occupational Safety and Health Administration ("OSHA"), and the Arizona Department of Health Services ("ADHS")—which included all the recommendations Governor Ducey set forth in 2020-36, as well as additional safeguard to reduce the risk to Plaintiffs' employees and customers. Pl. Decls. ¶¶ 7-8 and Ex. 1 to each.

Then, on June 29, 2020—having just allowed Plaintiffs to resume business, putting hundreds of people back to work and providing essential physical fitness services to tens of thousands of Arizona citizens—Governor Ducey issued E.O. 2020-43 directing all "[i]ndoor gyms and fitness clubs or centers" in Arizona to "pause operations" until at least July 27, 2020. RJN Ex. 11. This Order was issued without warning, without an opportunity to comment, and without regard to the effectiveness of the protocols that Plaintiffs implemented to protect against COVID-19 under Governor's Ducey's prior Executive Orders. Pl. Decls. ¶ 15.

The purported need for the drastic measures imposed on Plaintiffs by E.O. 2020-43 is a recent "increase in the number of [COVID-19] cases and hospitalizations," which "necessitate[s] the need for an increased focus on precautionary measures by both businesses and individuals." RJN Ex. 11. But despite singling out indoor gyms and fitness clubs for categorical shutdown, E.O. 2020-43 contains ***no*** evidence or scientific data indicating that gyms and fitness clubs are responsible for the increase in COVID-19 cases; ***no*** evidence that they present a higher risk of spreading the virus than other types of businesses; ***no*** evidence that adherence to physical distancing and related measures the Governor had previously imposed upon gyms had proven ineffective; and ***no*** evidence

that Plaintiffs or their franchisees somehow failed to properly implement these measures in the boutique studios they operate. *Id.* On the contrary, Plaintiffs are in full compliance with the ADHS guidance for COVID-19 business operations, and there are no reported incidents of customers or employees becoming infected with COVID-19 while exercising or working at any of Plaintiffs' franchises in Arizona. Pl. Decls. ¶¶ 11-13. The lack of evidence supporting E.O. 2020-43 is particularly striking given that many non-essential businesses—including casinos, tanning salons, "big box" liquor stores, and tattoo parlors—are free to continue operating. *See* RJN Ex. 11.

Executive Order 2020-43 also lacks coherent directives regarding its duration and how impacted businesses can obtain authorization to reopen. The Order indicates that a gym or other affected business cannot reopen until it completes a "form" attesting that it "is in compliance with guidance issued by ADHS related to COVID-19 business operations" (RJN Ex. 11), but the State has not made the "form" available. Pl. Decls. ¶ 16; *see also* Luna Decl. Ex. 2. To make matters more confusing, there is no explanation of what "guidance" businesses must comply with. RJN Ex. 11; Pl. Decl. ¶ 16. If the "guidance" in question refers to the comprehensive guidelines the State mandated in E.O. 2020-36 for gyms to reopen, then Plaintiffs (and presumably other similar businesses) *are already in compliance with that guidance*—and expended tremendous amounts of resources to do so. Pl. Decls. ¶¶ 7, 8, 10; *see also* Declaration of Kevin L. Winthrop ("Winthrop Decl.") ¶¶ 10-18.[3] And if there is some other "guidance" with which Plaintiffs must comply, the State has not issued it—effectively making the duration of E.O. 2020-43 subject to the whims of the executive. *See* Luna Decl. ¶ 16 and Ex. 2.

In shutting down all facets of an entire industry, the State disregarded the very findings and policies set forth in Governor Ducey's prior Executive Orders mandating social distancing and other measures, which were based on our best scientific and medical knowledge, to mitigate the spread of COVID-19. *See* RJN Exs. 7, 8, 9. In fact,

_____

[3] The Winthrop Declaration (and exhibits thereto) are attached hereto as Exhibit B.

expert physician and epidemiologist Kevin L. Winthrop, M.D., opines "that there are other measures that can be implemented by the state of Arizona that could be more effective to restrict the spread of the COVID-19 virus than singling out indoor gyms and fitness clubs for categorical shutdown." Winthrop Decl. ¶ 19. Moreover, Dr. Winthrop has reviewed the COVID-19 protocols implemented by Plaintiffs and opines that they "meet, and in some cases, exceed the recommendations set forth in the ADHS Guidance for Gyms and Fitness Providers" and "represent an appropriate approach to mitigate the risk of COVID-19 while providing an opportunity for patrons to improve their fitness, health, and mental well-being." *Id*. ¶¶ 12-18.

## LEGAL STANDARD

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts may also issue temporary restraining orders when there are "serious questions going to the merits" and a "balance of hardships that tips sharply towards the plaintiff," so long as the remaining two *Winter* factors are present. *Alliance for Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011).

## ARGUMENT

## I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.     Executive Order 2020-43 Violates Plaintiffs' Due Process Rights Under the Fourteenth and Fifth Amendments

Executive Order 2020-43, issued without notice or an opportunity for Plaintiffs to be heard, was an arbitrary exercise of government power that deprived Plaintiffs of their

property interest in violation of the Fourteenth and Fifth Amendments.

1. **Executive Order 2020-43 Violates Procedural Due Process**

The Supreme Court has made clear that the essence of procedural due process is fair play, and the fundamental due process requirement is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Thus, "[a] procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998), *cert. denied*, 526 U.S. 1018 (1999). In determining what procedural protections were due, courts balance three factors: (1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state. *Matthews*, 424 U.S. at 335.

Here, due process required the State to afford Plaintiffs both notice and a hearing before their operations were shut down indefinitely. Plaintiffs had a valid property interest in continuing the operation of their fitness studios. *See Truax v. Corrigan*, 257 U.S. 312, 327 (1921) ("Plaintiffs' business is a property right [citation], and free access for employees, owner, and customers to his place of business is incident to such right."); *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) ("A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law."). The State deprived Plaintiffs of that protected property interest without any pre-deprivation procedural protections ***at all***; much less constitutionally adequate procedures giving Plaintiffs a meaningful opportunity to be heard. *See, e.g.*, *Matthews*, 424 U.S. at 333 ("[S]ome form of hearing is required before an individual is finally deprived of a property interest."); *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 867 (9th Cir. 2009), *aff'd*, *Chamber of Commerce of U.S. v.*

*Whiting*, 563 U.S. 582 (2011) ("Employers thus should be given an opportunity to be heard before their business licenses are suspended or revoked…."). Nor did the State provide any post-deprivation process by which businesses closed by E.O. 2020-43 could challenge application of the Order to their facilities. Although the deprivation of a protected property interest still requires courts to determine what process was due, where—as here—the property interest was taken with *no process at all*, the constitutional violation is obvious.

Application of the *Matthews* balancing factors confirms that the State violated due process. The private interest at stake is Plaintiffs' ability to operate their businesses and, by extension, provide livelihoods for their employees and their families. *See Chicanos*, 558 F.3d at 867. The hardship imposed on Plaintiffs by E.O. 2020-43's categorical deprivation of their right to work is therefore extreme. The risk of erroneous deprivation in the absence of procedural safeguards is also high. Indeed, the evidence demonstrates the State did, in fact, err when it shut down gyms entirely; there is nothing to indicate that gyms contributed to the recent spike in infections in Arizona, and the protocols Plaintiffs already implemented are sufficient to mitigate the risk of COVID-19 spread. *See* Winthrop Decl. ¶¶ 20, 21. The value of providing procedural protections is equally obvious: had Plaintiffs been given a chance, they could have presented evidence to the State demonstrating that gyms can be operated safely—and could have demonstrated that Plaintiffs' studios in particular have sufficiently mitigated the risk of spread, as evidenced by the fact that there has never been a reported case of an employee or customer contracting COVID-19 at one of Plaintiffs' fitness studios. And while controlling the spread of infection is an important government interest, the COVID-19 emergency does not eliminate constitutional safeguards. *See In re Kazas*, 22 Cal. App. 2d 161, 167 (1937) ("Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.") (quoting *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398, 425 (1934)).

Balancing the foregoing factors makes clear that at least *some* process was due

8

before the State could indefinitely close Plaintiffs' businesses. *See, e.g., Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985) (the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest"). By depriving Plaintiffs of a constitutionally protected property interest without notice, hearing, or a post-deprivation procedure to demonstrate that shuttering their fitness studios was unnecessary to achieve the State's goal, the State violated Plaintiffs' procedural due process rights.

### 2. Executive Order 2020-43 Violates Substantive Due Process

Even if issuing the Order without any procedural protections could pass muster (it cannot), E.O. 2020-43 violates due process for the independent reason that it targets gyms and fitness clubs for indefinite closure while allowing other businesses to remain open— without any basis to conclude that such disparate treatment is reasonably related to the State's goal of mitigating COVID-19. The Supreme Court has "emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Both the due process and equal protection provisions of the Fourteenth Amendment demand "some relation" between the different categories of business subject to E.O. 2020-43 "and the purpose [the Order] served." *Romer v. Evans*, 517 U.S. 620, 633 (1996).[4]

There is no valid scientific or medical reason to support the distinction between the businesses subject to E.O. 2020-43 and the businesses that are exempt. *See* Winthrop Decl. ¶¶ 19-21. The Order makes no attempt whatsoever to explain why the State's response to the increase in COVID-19 cases in Arizona necessitated closing all gyms and fitness clubs indefinitely but not other businesses, such as casinos, where even larger groups of people gather. The State was surely right to take action here, but E.O. 2020-43 cites no evidence that the increase in COVID-19 cases is even partially attributable to

---

[4] "Scrutiny under ordinary equal protection analysis is essentially equivalent to scrutiny under substantive due process doctrine." *Herrington v. Sonoma Cty.*, 834 F.2d 1488, 1495 n.4 (9th Cir. 1987, *cert. denied*, 489 U.S. 1090 (1989).

indoor exercise facilities, or that the businesses operating such facilities are failing to comply with the re-opening guidelines imposed by prior Executive Orders. Not only do physical fitness businesses serve an important function in maintaining public health generally, the empirical evidence indicates that fitness studios are ***not*** the cause of the recent uptick in infections: there has been not a single reported case of an employee or patron at any of Plaintiffs' 1,500+ studios in North America contracting COVID-19 on the premises. *See* Pl. Decl. ¶ 12; Winthrop Decl. ¶¶ 19-20. Yet E.O. 2020-43 closes gyms while allowing non-essential businesses—many of which have negative health consequences to the public—to continue operating. Moreover, E.O. 2020-43 allows other businesses, such as pools and bars, to operate under increased restrictions—but, again, gyms and fitness clubs are shut down entirely without justification or explanation why additional restrictions are insufficient to allow them to continue operation.

Federal guarantees of due process protection prohibit the government from imposing arbitrary or irrational classifications lacking a reasonable relation to a valid government interest. *See*, *e.g.*, *Romer*, 517 U.S. at 633. If shutting down businesses like indoor gyms and fitness clubs were necessary to reduce the spread of novel coronavirus, then Defendants would not have irrationally exempted numerous categories of business that similarly involve the congregation of individuals in retail spaces. There is simply no valid medical or scientific basis for denying Plaintiffs' right to conduct their businesses while permitting other businesses that present the same—or a greater—risk of spreading COVID-19 to continue without a mandatory "pause" in operations. As a result, E.O. 2020-43's disparate treatment of Plaintiffs' businesses violates substantive due process.

### 3. <u>Executive Order 2020-43 Is Impermissibly Vague</u>

"The fundamental principle that laws regulating persons or entities must give fair notice of what conduct is required or proscribed . . . is essential to the protections provided by the Fifth Amendment[] . . . which requires the invalidation of impermissibly vague laws." *F.C.C. v. Fox Television Stations*, 567 U.S. 239, 240 (2012). The test is whether the statute is "'so vague and indefinite as really to be no rule or standard at all,' or

whether a person of ordinary intelligence could understand" what the law requires. *Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015)

Here, the language of E.O. 2020-43 fails to give adequate guidance regarding its scope or duration. The term "[i]ndoor gyms and fitness clubs or centers" is undefined in the Order, and that phrase does not appear to have an accepted meaning or definition elsewhere in Arizona law. Thus, it is unclear which businesses are subject to E.O. 2020-43. Nor does E.O. 2020-43 explain what is meant by the directive to "pause operations," or how that directive will be enforced.

Even more problematic is the absence of clear language explaining when the shutdown of Plaintiffs' businesses will end, how Plaintiffs can obtain authorization to reopen, or what standards the State will consider in determining whether to allow a business to resume operation. The Order states authorization to reopen requires submission of a "form as prescribed by the [ADHS] that attests that the entity is in compliance with guidance issued by ADHS related to COVID-19 business operations," RJN Ex. 11, but no such form has been made available. To make matters worse, E.O. 2020-43 does not specify what "guidance issued by ADHS" is at issue. Indeed, Plaintiffs' business operations *are already in compliance with ADHS guidance*, which further obfuscates whether and how Plaintiffs can obtain authorization to resume operations. And if E.O. 2020-43 is referring to some yet-to-be-issued "guidance," there is no indication when it will be issued or how it will differ from existing guidelines—effectively making the shutdown of Plaintiffs' businesses indefinite and entirely at the whim of Governor Ducey. These fundamental uncertainties in the scope, application, and duration of E.O. 2020-43 render the Order "so vague and indefinite as really to be no rule or standard at all." *Fang Lin Ai*, 809 F.3d at 514. Given that violations of E.O. 2020-43 give rise to criminal sanctions, *see* A.R.S. § 26-317, the Order must be declared void for vagueness.

**B.** **Executive Order 2020-43 Violates Plaintiffs' Rights Under the Equal Protection Clause of the Fourteenth Amendment**

For the reasons stated in Section I.A.2, *supra*, Plaintiffs are likely to succeed on the merits of their equal protection claim given E.O. 2020-43's disparate treatment of gyms without any basis rationally tied to the purported goal of addressing the increase in COVID-19 infections in Arizona.

**C.** **Executive Order 2020-43 Results in a Taking that Violates Plaintiffs' Rights Under the Fifth Amendment**

Executive Order 2020-43 also amounts to an unlawful taking of Plaintiff's property. To determine whether a "partial taking" has occurred, the Court must balance three factors: (1) the economic impact of the regulation on the plaintiff; (2) the extent to which the regulation has interfered with the plaintiff's "distinct investment-backed expectations;" and (3) the character of the government action. *See Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 131-137 (1978). The first two factors overwhelmingly weigh in favor of finding a taking here. The economic impact on Plaintiffs will be devastating—indeed, Plaintiffs will have no ability to operate their businesses in Arizona during the indefinite duration of E.O. 2020-43's categorical shutdown of gyms and fitness clubs. Pl. Decl. ¶¶ 17, 18. This obviously interferes with Plaintiffs' "investment-backed expectations," as well. *Id*. ¶¶ 19, 20.

The character of the State's action in issuing E.O. 2020-43 also indicates that an unconstitutional taking has occurred. The Supreme Court has made clear that "[t]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). By closing Plaintiffs' businesses entirely, while allowing others to continue operating, E.O. 2020-43 improperly shifts the overwhelming burden of curtailing the further spread of novel coronavirus from the business community collectively to only certain businesses—none

12

of whom have been offered compensation for the ruinous economic consequences they will suffer as a result. Moreover, the Supreme Court has held that "the Fifth Amendment is violated when land-use regulation does not substantially advance legitimate state interests," *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1016 (1992), and as discussed above, banning Plaintiffs' business indefinitely while allowing others to continue has no rational relation to the purported goal of slowing COVID-19 cases. That E.O. 2020-43 may be temporary (although that is unclear) does not change the analysis: an unconstitutional "taking" is still unconstitutional even if the taking is temporary. "The potential for future relief does not control … because whatever may occur in the future cannot undo what has occurred in the past. … It is well established that temporary takings are as protected by the Constitution as are permanent ones." *First English Evangelical Lutheran Church v. County of L.A.*, 482 U.S. 304, 318 (1987).

### D. Executive Order 2020-43 Violates Plaintiffs' Rights Under the Contracts Clause

Article I of the United States Constitution provides "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." In determining whether the challenged action violates the Contracts Clause, the Court should first determine whether it "operate[s] as a substantial impairment of a contractual relationship." *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). Here, Plaintiffs are parties to valid franchise agreements with individual operators of Plaintiffs' fitness brands. Pl. Decls. ¶¶ 3, 19. These contracts establish various rights inuring to Plaintiffs' benefit, including the right to receive royalties and other payments from franchisees. *Id*. ¶ 19. The franchisees are, in turn, parties to contracts with the individual customers who pay the franchisees for fitness services and products provided by Plaintiffs and the franchisees. *Id*. Plaintiffs are beneficiaries of these contracts because their income is directly tied to the franchisees' ability to provide fitness services and products to individual customers. *Id*.

By its terms, E.O. 2020-43 substantially impairs these contractual relationships because it eliminates the very essence of the contractual bargains that form the bases for

these contracts. The ability of Plaintiffs' franchisees to operate fitness studios and to provide exercise services and products to customers had obvious value and was a significant factor in Plaintiffs' bargaining expectations when entering into these contracts. Thus, E.O. 2020-43 substantially impairs existing contractual relationships inuring to Plaintiffs' benefit.

Moreover, E.O. 2020-43 is not drawn in an appropriate or reasonable way to advance a significant and legitimate public purpose. E.O. 2020-43's irrational exemptions allowing non-essential businesses (such as casinos) to continue operations while shuttering gyms and fitness clubs demonstrates the that Order was not a proper exercise of the police power, but instead sought to provide a benefit to special interests while harming Plaintiffs. Because E.O. 2020-43's disparate treatment of Plaintiffs' businesses does not reasonably advance the purpose of mitigating COVID-19, and because more moderate and narrowly tailored restrictions on indoor gyms and fitness clubs would have served the State's purported purpose equally well, there is no justification for the impairment of Plaintiffs' contractual relationships imposed by E.O. 2020-43.

E.  **Executive Order 2020-43 Violates the Due Process and Equal Protections Clauses of the Arizona Constitution**

Plaintiffs are likely to succeed on their claims under the Arizona constitution for the same reasons detailed above. Like the federal constitution, the Arizona constitution guarantees citizens the right to due process and equal protection, and the scope of those rights is at least as extensive as under federal law. *See, e.g.*, *Arizona v. Casey*, 205 Ariz. 359, 362 (2003) (noting that the federal and state due-process clauses "contain nearly identical language and protect the same interests").

II.  **PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT IMMEDIATE INJUNCTIVE RELIEF**

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *see also Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865,

882 (9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."), *rev'd on other grounds*, 562 U.S. 134 (2011); *Am. Trucking Assoc., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) ("[T]he constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm.").

In this case, the irreparable harm to Plaintiffs from the shutdown of their businesses is beyond reasonable dispute. In addition to the obvious hit to Plaintiffs from the closure of their franchises in Arizona, the irreparable harm to Plaintiffs includes the loss of franchise opportunities to other industries that are not subject to the shutdown orders or the business uncertainties that the orders create. Pl. Decls. ¶¶ 19-20. Moreover, the unconstitutional mandate in E.O. 2020-43 has harmed Plaintiffs' reputation and goodwill, including the loss of employment to employees of Plaintiffs' franchisees and loss of patrons of their fitness studios. *Id*. ¶¶ 21-22; *see Am. Trucking Assoc.*, 559 F.3d 1046, 1058 (9th Cir. 2009) (irreparable harm from unconstitutional mandate includes "at the very least a loss of customer goodwill"); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.").

## III. THE BALANCE OF EQUITIES FAVOR PLAINTIFFS, AND AN INJUNCTION IS IN THE PUBLIC INTEREST

In balancing the hardships, "the injunction must do more good than harm (which is to say that the 'balance of equities' favors the plaintiff)." *Alliance for the Wild Rockies*, 632 F.3d at 1133 (citation omitted); *see also Stormans*, 586 F.3d at 1138 ("[T]he district court has a duty ... to balance the interests of all parties and weigh the damage to each.") (citation omitted). That is the case here. If no injunctive relief is granted, the irreparable harm to Plaintiffs in the form of a renewed shutdown of their businesses is great (as shown above). Conversely, if the injunction is granted, there is no increased likelihood of the spread of COVID-19, because Plaintiffs have already properly developed, established, and implemented the protocols necessary for mitigating against COVID-19.

In addition, when the grant of an injunction implicates the public interest, the court must "weigh the public interest in light of the *likely* consequences of the injunction." *Stormans*, 586 F.3d at 1139 (emphasis in original). Obviously, "[t]he general public has an interest in the health of state residents." *Id.* (citation omitted). In this case, the public interest weighs heavily in favor of granting the injunction so that Arizonans may enjoy the mental and physical health benefits resulting from the panoply of fitness services provided by Plaintiffs' businesses. *See also Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (citation omitted); *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 854 (E.D. Cal. 2018) ("California has no legitimate interest in enforcing an unconstitutional law.") (citation omitted). Moreover, granting the injunction will avoid the job losses and other harms to the public interest from a further shutdown of Plaintiffs' businesses. *See Alliance for the Wild Rockies*, 632 F.3d at 1138 ("The effect on the health of the local economy is a proper consideration in the public interest analysis."). On the other hand, no harm will result to the public interest in allowing Plaintiffs' businesses to operate because they are in compliance with the protocols mandated to protect the public health from COVID-19.

## IV.    THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT

Although FRCP 65(c) provides that provisional injunctive relief may be issued only if the movant gives a security, the Court has discretion as to whether any security is required. *See Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003). Plaintiffs ask the Court to waive any bond requirement, because enjoining the unconstitutional enforcement of E.O. 2020-43 will not financially affect Defendants, while a bond would be burdensome on already burdened Plaintiffs under these circumstances. *See, e.g., Bible Club v. Placentia-Yorba Linda Sch. Dist.,* 573 F. Supp. 2d 1291, 1032 n. 6 (C.D. Cal. 2008) (waiving bond requirement where case involved the probable violation of plaintiffs' constitutional rights and minimal damages to the defendant).

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion and enjoin enforcement of E.O. 2020-43 against Plaintiffs.

RESPECTFULLY SUBMITTED this 3rd day of July, 2020.

**QUARLES & BRADY LLP**
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391

By */s/ Brian A. Howie*
    Brian A. Howie

Alex M. Weingarten* (CA 204410)
amweingarten@venable.com
Celeste M. Brecht* (CA 238604)
cmbrecht@venable.com
Jeffrey K. Logan* (CA 136962)
jklogan@venable.com
Steven E. Swaney* (CA 221437)
seswaney@venable.com
**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA  90067

*Attorneys for Plaintiffs*
Xponential Fitness, LLC, AKT Fitness, LLC,
Club Pilates Franchise, LLC,
CycleBar Franchising, LLC, PB Franchising,
LLC, Row House Franchise, LLC,
Stretch Lab Franchise, LLC and Yoga Six
Franchise, LLC

*\*Pro Hac Vice Forthcoming*