Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
Derek C. Flint (#034392)
Michael A. Calvanico (#034884)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
          cahler@swlaw.com
          dflint@swlaw.com
          mcalvanico@swlaw.com

Anni L. Foster (#023643)
General Counsel
Office of Arizona Governor Douglas A. Ducey
1700 West Washington Street
Phoenix, Arizona 85007
Telephone: 602-542-4331
E-Mail: afoster@az.gov

*Attorneys for Defendant Douglas A. Ducey,
Governor of the State of Arizona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xponential Fitness LLC, et al.<br><br>   Plaintiffs,<br><br>   vs.<br><br>The State of Arizona and Douglas A. Ducey, Governor of the State of Arizona, in his official capacity,<br><br>   Defendants. | No. 2:20-cv-01310-DJH<br><br>**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Oral Argument Requested<br><br>Assigned to: Hon. Diane J. Humetewa |

Defendant Douglas A. Ducey, Governor of the State of Arizona, moves to dismiss the Complaint (Doc. 1), in its entirety and with prejudice under Rule 12(b)(6), Fed. R. Civ. P. This motion is supported by the following memorandum and Governor Ducey's Motion for Judicial Notice of facts relating to the COVID-19 pandemic. (Doc. 36.) A Notice and Certification of Conferral has been filed contemporaneously with this Motion; the parties have conferred and did not agree the pleadings could be cured by permissible amendment.

## I.     Introduction

"As all are painfully aware, our nation faces a public health emergency caused by the exponential spread of [2019 novel Coronavirus ("COVID-19")]." *In re Abbott*, 954 F.3d 772, 779 (5th Cir. 2020). In the face of this ongoing crisis and the sharp increase of COVID-19 cases in Arizona, Plaintiffs assert various constitutional challenges to Governor Ducey's June 29, 2020 Executive Order ("EO") 2020-43, "Pausing of Arizona's Reopening: Slowing the Spread of COVID-19." The focus of the country, if not the world, is now on Arizona as positive cases and deaths of fellow Arizonans drastically increase. In making decisions for the well-being of Arizonans, Governor Ducey must balance this unfortunate reality against the very real hardships suffered, and sacrifices made, by each of the Plaintiff businesses. However, when Governor Ducey rationally adheres to expert guidance to combat the COVID-19 crisis and save Arizonan's lives—an undisputedly legitimate state interest— claims against those sound public policy decisions cannot be maintained.

## II.    Background

Even before the recent spike of cases in Arizona, the federal Center for Diseases Control and Prevention ("CDC") reported that "**[t]he virus that causes COVID-19 is spreading very easily and sustainably between people**." (Doc. 36 at ¶ 14 (emphasis in original)). The CDC also stated that "COVID-19 is primarily spread from person to person," and a person "can become infected by coming into close contact (about 6 feet or two arm lengths) with a person who has COVID-19." (*Id.* at ¶ 16.) To limit the spread, the CDC recommends that people "limit in-person contact as much as possible." (*Id.*)

On March 11, 2020, Governor Ducey issued a Declaration of Emergency for Arizona. (*Id.* at ¶ 22.) On March 19, 2020, Governor Ducey issued EO 2020-09, which, among other things, mandated that indoor gyms, fitness centers, and fitness clubs (collectively "Gyms") "close access to the public until further notice." (*Id.* at ¶¶ 23-25.)

On May 12, 2020, Governor Ducey issued EO 2020-36 to gradually reopen Arizona businesses in accordance with federal guidelines. (*Id.* at ¶ 26-27.) In conjunction with EO 2020-36 and in consultation with ADHS, Governor Ducey also issued guidance for Gyms on additional safety precautions to take when reopening. (*Id.* at ¶ 29.)

On July 8, 2020, the Arizona Department of Health Services ("ADHS") reported 108,614 cases and 1,963 deaths in Arizona. (*Id.* at ¶ 1.) Since early May when this Court heard the first challenge to Governor Ducey's EOs, *McGhee v. City of Flagstaff*, No. CV-20-08081-PCT-GMS, 2020 WL 2308479 (D. Ariz. May 8, 2020), the number of positive COVID-19 cases in Arizona increased by approximately 1,117% and the death toll increased by 442%. (Doc. 36 at ¶ 1.) The largest increase has been those aged 20-44 years old. (*Id.* at ¶¶ 4, 6, 31.)

To reemphasize the necessity to stem the virus, the CDC has recommended that "people should wear cloth face coverings in public settings when around people outside of their household, especially when other social distancing measures are difficult to maintain." (*Id.* at ¶ 20.) However, the CDC has recognized there are certain circumstances that may affect an individual's ability to wear a face mask, including exercise, and thus recommends "doing any vigorous-intensity exercise outside when possible and stay *at least* 6 feet away from other participants, trainers, and clients if unable to wear a face covering." (*Id.* at ¶ 21 (emphasis added)). According to a research letter published by the CDC before the issuance of EO 2020-43, the "moist, warm atmosphere in a sports facility coupled with turbulent air flow generated by intense physical exercise can cause more dense transmission of isolated droplets." (*Id.* at ¶ 19.) Moreover, "[b]ecause of the increased possibility of infection through droplets, vigorous exercise in closely confined spaces should be avoided during the current outbreak, as should public gatherings, even in small groups." (*Id.*)

- 2 -

On June 29, 2020, Governor Ducey concluded that "the increased case numbers and hospitalizations also necessitate the need for an increased focus on precautionary measures by both businesses and individuals," and issued EO 2020-43 prohibiting certain "public events of more than 50 people." (Doc. 36 at ¶¶ 34-35.) In addition, EO 2020-43 required that Gyms "pause operations until at least July 27, 2020, unless extended." (*Id.* at ¶ 35.) Once that initial 30-day pause period elapses, affected businesses "shall complete and submit a form as prescribed by [ADHS] that attests the entity is in compliance with guidance issued by ADHS related to COVID-19 business operations" to "receive authorization to reopen." (*Id.* at ¶ 36.)

## III. Argument

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. None of Plaintiffs' seven claims satisfy this standard.

### A. Plaintiffs fail to state a plausible claim that EO 2020-43 violates their federal procedural due process rights (Count One)[1]

#### 1. Plaintiffs fail to allege a constitutionally protected property interest.

Plaintiffs fail to allege the threshold requirement for a procedural due process claim: the deprivation of a constitutionally protected property interest. *See Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998) (listing two essential elements of procedural due process claim). Plaintiffs instead claim, without any supporting authority, that they have a "fundamental property interest in conducting lawful business activities." (Doc. 1 at ¶ 44.)

Federal courts, including the U.S. Supreme Court, have rejected this theory: "[T]he assertion of a 'general right to do business' has not been recognized as a constitutionally

---

[1] Count One also asserts a substantive due process claim, which is addressed below.

- 3 -

protected right." *Talleywhacker, Inc. v. Cooper*, 2020 WL 3051207, at \*12 (E.D.N.C. June 8, 2020) (collecting authorities); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (holding that a business's assets are property, but that "business in the sense of *the activity of doing business* or *the activity of making a profit* is not property . . ."). Like this case, *Talleywhacker* involved a procedural due process challenge against a business closure order related to COVID-19. *Talleywhacker*, 2020 WL 3051207, at \*12. The court concluded that the claim lacked merit because plaintiffs "fail[ed] to identify a constitutionally cognizable life, liberty, or property interest." *Id.*

By contrast, Plaintiffs cite two cases to support their argument that they "had a valid property interest in continuing the operation of their fitness studios." (Doc. 21 at 7.) But neither case supports this proposition. The first case, *Truax v. Corrigan*, 257 U.S. 312 (1921), is a relic of the *Lochner* era in Fourteenth Amendment jurisprudence, when the Supreme Court applied greater scrutiny to government regulations affecting businesses. *See Truax*, 257 U.S. at 339; *see also In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 283 (4th Cir. 2007) ("The recognition of such a broad 'right to do business,' would be akin to that recognized in *Lochner* . . . which the Supreme Court has long since refused to recognize."). Its holding is inconsistent with the Court's modern-day due process caselaw, including *College Savings Bank*, which applies a deferential standard to economic regulations and concluded the activity of making a profit is not a property right. *See* 527 U.S. at 675; *In re Premier Auto.*, 492 F.3d at 283.

The second case relied on by Plaintiffs, *Wedges/Ledges of California v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994), is inapposite. There, the court looked to state law to determine whether the plaintiffs had a property interest in a license. 492 F.3d at 62. The court did not hold that a company has a protected property interest in business operations. *See id.*

**2.  A generally applicable order does not create due process rights.**

Even if "conducting lawful business" is somehow constitutionally protected, Plaintiffs still fail to state a procedural due process claim. Because EO 2020-43 is rule of general applicability that applies prospectively to *all* Arizona Gyms, the order does not confer procedural due process rights.

- 4 -

"Before due process rights attach, a person must show that the deprivation occurred as a result of an adjudicatory process rather than a legislative process." *Blocktree Props. LLC v. Pub. Util. Dist. No. 2*, 380 F. Supp. 3d 1102, 1121 (E.D. Wash. 2019) (citing *Harris v. Cty. of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990)). Courts have found "little guidance in formalistic distinctions" in applying this rule. *Harris*, 904 F.2d at 501. "If the matter is one in which 'all are equally concerned,' the matter is a legislative process and due process rights do not attach." *Blocktree*, 380 F. Supp. 3d at 1121 (quoting *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)). This includes the "exercise of a quasi-legislative function" that "operates prospectively and establishes rules of general conduct binding upon many persons." *Brown v. Winter*, 50 F. Supp. 804, 806 (W.D. Wis. 1943).

Recently, two federal courts considering very similar circumstances—the closure of classes of businesses like gyms to protect the public from COVID-19—have concluded that generally applicable emergency orders "do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." *Best Supplement Guide, LLC v. Newsom*, No. 2:20-CV-00965-JAM-CKD, 2020 WL 2615022, at *5 (E.D. Cal. 2020) (considering "State and County [COVID-19] orders prohibit[ing] the operation of all gyms and workout facilities within their respective jurisdictions"); *see also Hartman v. Acton*, 2020 WL 1932896, at *8 (S.D. Ohio 2020) ("The State's [COVID-19] Order directing non-essential businesses to cease operating their physical locations did not violate Plaintiffs' due process rights because the Director's Order was a generally applicable order affecting thousands of businesses, and not a decision targeting an individual or single business."). The right to a hearing only applies "to instances where the deprivation was targeted to a particular individual, business, and/or fundamental right." *Hartman*, 2020 WL 1932896, at *9.

Here, EO 2020-43 is a generally applicable order in which "all [Gyms] are equally concerned." *Bi-Metallic*, 239 U.S. at 445. Because EO 2020-43 does not target any Plaintiff, it is not adjudicatory and does not give rise to due process rights.

### 3. EO 2020-43 provides adequate procedural protections.

Even if EO 2020-43 conferred Plaintiffs with procedural due process rights, the order contains adequate protections. *See Brewster,* 149 F.3d at 982 (procedural due process claim requiring a showing of "a denial of *adequate* procedural protections") (emphasis added). Due process is flexible and calls for such procedural protections as demanded by the rights and interests at stake in the particular case. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

Here, Governor Ducey had no obligation to provide Plaintiffs with notice, a hearing, or other procedural rights *before* issuing EO 2020-43 because *pre*-deprivation process is not required in an emergency situation. *See Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1406 (9th Cir. 1989), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (recognizing that because "government officials need to act promptly and decisively when they perceive an emergency," under these circumstances, "no pre-deprivation process is due"). To the contrary, the "Supreme Court has affirmed 'that summary governmental action taken in emergencies and designed to protect the public health, safety and general welfare *does not violate due process*.'" *McGhee v. City of Flagstaff*, 2020 WL 2308479, at *4 (emphasis added) (quoting *Lumbreras v. Roberts*, 319 F. Supp. 2d 1191, 1206 (D. Or. 2004)); *see also Hodel v. Va. Surface Min. & Reclamation Ass'n*, *Inc*., 452 U.S. 264 (1981) (deprivation of property to protect public health is "[o]ne of the oldest examples of permissible summary action").

Here, Plaintiffs readily admit that COVID-19 is "a national health emergency." (*See* Doc. 21 at 6; *see also id.* ("The coronavirus pandemic requires decisive government action, to be sure")); (*id.* at 8 (referring to "the COVID-19 emergency")); (Doc. 1 at ¶¶ 1, 25.) Under *Sinaloa Lake* and other authorities, Plaintiffs had no right to any pre-deprivation process.

As for *post*-deprivation process, Plaintiffs concede that EO 2020-43 provides them with a process in the form of an attestation form to reopen. (*See* Doc. 1 at ¶ 36.) They nevertheless argue they should be provided with an "opportunity to present their case for their businesses to not be subject to the Order." (*Id.* at ¶ 45.) But such a waiver process would flatly contradict Governor Ducey's policy decision to order a blanket pause on *all* Gyms, rather

- 6 -

1 than making resource-intensive, case-by-case determinations of which Gyms are following
2 relevant guidance. *See Benner v. Wolf*, 2020 WL 2564920, at *5 (M.D. Pa. May 21, 2020)
3 ("Indeed, requiring more detailed procedures could very well overwhelm an already taxed
4 system . . . ."); *see also In re Abbott*, 954 F.3d at 784 (explaining that the Supreme Court has
5 "disclaimed any judicial power to second-guess policy choices made by the state in crafting
6 emergency public health measures"). To the extent Plaintiffs argue the process is insufficient
7 because the re-opening authorization form is not yet available, the Governor has no obligation
8 to rush out a form (without industry input), especially given that re-opening is not even
9 authorized until July 27. Moreover, any arguments concerning the sufficiency of the not-yet-
10 released form are unripe.

**B.   Plaintiffs fail to state a plausible claim that their federal substantive due process or equal protection rights were violated (Counts One and Two).**

13 Plaintiffs assert that EO 2020-43 violates their federal substantive due process and
14 equal protection rights. (Doc. 1 at ¶¶ 46-47, 54.) As Plaintiffs concede, both claims are subject
15 to rational basis review. (Doc. 21 at 13, 16); *see Munoz v. Sullivan*, 930 F.2d 1400, 1404-05
16 n.10 (9th Cir. 1991). This deferential standard applies to the substantive due process claim
17 because Plaintiffs' amorphous "rights and liberties [related] to their respective businesses"
18 do not implicate any *fundamental* right. *See Dittman v. California*, 191 F.3d 1020, 1031 n.5
19 (9th Cir. 1999) ("The [Supreme] Court has never held that the 'right' to pursue a profession
20 is a *fundamental* right . . . ."). Likewise, because EO 2020-43 does not involve any "suspect"
21 classifications (such as race or alienage), rational basis review applies to the equal protection
22 claim. *See FCC v. Beach Commc'ns, Inc.* 508 U.S. 307, 313 (1993).

23 Under a rational basis standard, a court will uphold a law if it has *any* conceivable
24 rational basis to further a legitimate governmental interest. *See League of Indep. Fitness*
25 *Facilities & Trainers v. Whitmer*, No. 20-1581, 2020 WL 3468281, at *2 (6th Cir. June 24,
26 2020); *Best Supplement Guide*, 2020 WL 2615022, at *6. Rational basis review does not
27 require that the government's actual or articulated justification be supported by evidence or
28 empirical data. *See Whitmer*, 2020 WL 3468281, at *2 (explaining that rational basis review

- 7 -

analysis "is *not subject to courtroom fact-finding* and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (quoting *Beach Commc'ns*, 508 U.S. at 313-15 (emphasis added))). Moreover, courts are particularly deferential to government action "in the case of a public health crisis like the one presented by COVID-19." *Id.* (citing *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Mem.) (Roberts, C.J., concurring in the denial of injunctive relief).

Federal courts have strongly indicated that orders temporarily closing gyms due to COVID-19 easily satisfy rational basis review. For example, the Sixth Circuit recently held that "[t]he idea that heavy breathing and sweating in an enclosed space containing many shared surfaces creates conditions likely to spread the virus is a paradigmatic example of 'rational speculation' that fairly supports the Governor's [decision to close] indoor fitness facilities." *Whitmer*, 2020 WL 3468281, at *3. The Eastern District of California similarly refused to enjoin a challenged order based on substantive due process and equal protection challenges, and explained that "COVID-19 is a highly infectious, and sometimes deadly, virus that is often spread by people who do not even know they have it," "[t]here's no cure or vaccine," and "limiting physical contact between people is the most effective way to stop COVID-19's spread." *Best Supplement Guide*, 2020 WL 2615022, at *5-6. Similarly, Chief Judge Snow recognized that a rational basis readily existed for a COVID-19-related executive order that was more restrictive than EO 2020-43. *McGhee*, 2020 WL 2308479, at *1-2, *5.

Here, this Court need not look any further than the Complaint's allegations and judicially noticeable facts to determine that EO 2020-43 satisfies rational basis review. As discussed, Arizona has seen a sharp increase of COVID-19 cases over the past several weeks, notwithstanding the gym protocols put in place in May. (Doc. 36 at ¶ 4.) The age group showing the largest increase in positive cases is persons aged 20-44, the same age group commonly known to regularly frequent Gyms. (*Id.* at ¶¶ 6, 31.) The CDC has reported that COVID-19 spreads easily from person-to-person, and a person showing no symptoms can spread COVID-19 (*Id.* at ¶¶ 14, 16-17.) The CDC has also stated that due to heavy breathing, vigorous exercise can increase the likelihood that respiratory droplets spread the virus. (*Id.* at

¶ 19.) By temporarily closing Gyms, EO 2020-43 is rationally related to combatting the spread of COVID-19, which Plaintiffs concede is "a public health emergency of international concern." (Doc. 1 at ¶ 25.)

Any contention that Governor Ducey had "better" or less-restrictive options is irrelevant. (*See* Doc. 1. at ¶¶ 37-39.) As the Sixth Circuit held in *Whitmer*, the "Governor's order need not be the most effective or least restrictive measures possible to attempt to stem the spread of COVD-19." *Whitmer*, 2020 WL 3468281, at *3. Moreover, the U.S. Supreme Court has "disclaimed any judicial power to second-guess the state's policy choices in crafting emergency public health measures." *Abbott*, 954 F.3d at 784. This is because "[a] community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Massachusetts*, 197 U.S. 11, 26-27 (1905) (rejecting a due process challenge to a state law mandating smallpox vaccinations). Thus, "'[u]nder the pressure of great dangers,' constitutional rights may be reasonably restricted 'as the safety of the general public may demand.'" *Abbott*, 954 F.3d at 778 (quoting *Jacobson*, 197 U.S. at 29) (upholding a temporary COVID-related abortion restriction under *Jacobson*). Here, where fundamental rights are not even implicated (unlike *Abbott* and *Jacobson*), EO 2020-43 easily satisfies due process and equal protection guarantees. *See Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 937-38 (9th Cir. 2000) (affirming grant of motion to dismiss after applying rational basis review to equal protection and due process claims).

Moreover, because rational basis review does not require that a decision be supported by empirical data or evidence, Governor Ducey need not show that Gyms are more dangerous than other types of businesses that are currently allowed to remain open. In *Whitmer*, for instance, the Sixth Circuit concluded that a gym closure order satisfied rational basis review even though it "does not close every venue in which the virus might easily spread." *Whitmer*, 2020 WL 3468281, at *3; *see also Talleywhacker*, 2020 WL 3051207, at *10-11 ("While plaintiffs effectively point out similarities between their businesses and those allowed to

reopen, 'a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'" (citations omitted)).[2]

### C. Plaintiffs fail to state a plausible claim that EO 2020-43 constitutes a taking of property requiring compensation (Count Three)

Plaintiffs' takings claim should be dismissed.[3] *First*, "[t]o establish a violation of the Takings Clause, [Plaintiff] must first demonstrate he has a property interest that is constitutionally protected." *Schneider v. Cal. Dep't of Corr. (Schneider II)*, 151 F.3d 1194, 1198 (9th Cir. 1998). Plaintiffs cannot satisfy this requirement. As discussed, "the assertion of a 'general right to do business' has not been recognized as a constitutionally protected right." *Talleywhacker*, 2020 WL 3051207, at *12; *Coll. Sav. Bank,* 527 U.S. at 675 (similar).

*Second*, "[t]he taking clause of the Fifth Amendment has no bearing on laws that *indirectly* work a harm on individuals." *Rogers Truck Line, Inc. v. United States*, 14 Cl. Ct. 108, 112 (1987); *see also Omnia Commercial Co. v. United States*, 261 U.S. 502, 510 (1923) ("[F]or consequential loss or injury resulting from lawful governmental action the law affords no remedy."). Of significance here, Plaintiffs are *franchisors* of different fitness businesses, not franchisees. (*See* Doc. 1 at ¶¶ 18-24.) As such, Plaintiffs do not claim to own or lease any land containing any gym, the use of which has been temporarily restricted by EO 2020-43. Similarly, no Plaintiff alleges that it actually operates a fitness studio in Arizona. (*See* Doc. 1 at ¶ 91 (conceding that franchisees operate the studios)). EO 2020-43 does not prohibit Plaintiffs from continuing to "manage[] the licensing, systems and processes employed in operating the franchise system for [their] fitness brand[s]," even if it indirectly reduces the demand for such services. (Doc. 1 at ¶¶ 18-24.) Plaintiffs' allegations of indirect harm cannot give rise to compensable takings claim. *See Huntleigh USA Corp. v. United States*, 525 F.3d

---

[2] The CDC publications discussed above, combined with the specific ADHS data on COVID-19, show that Governor Ducey *did* have evidence to support a determination that gyms presented a unique and different risk than businesses allowed to stay open. (Doc. 36 at ¶ 37.)

[3] While the Complaint seeks an injunction against the alleged taking, such relief is not available. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179 (2019) ("As long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed").

1370, 1380 (Fed. Cir. 2008) (rejecting takings claim when statute did not "regulate [plaintiff] directly" but "drastically reduced the demand for plaintiff's services").

*Third*, Plaintiffs have no protected or compensable interest in being able to engage in activities that are harmful to public health in the middle of an emergency pandemic, such as the operation of a gym (which Plaintiffs do not even do). *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) ("[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community" (quoting *Mugler v. Kansas*, 123 U.S. 623, 665 (1887))); *see also M & J Coal Co. v. United States*, 47 F.3d 1148, 1154 (Fed. Cir. 1995) (holding that no taking occurred when state limited mining rights because "bundle of rights" plaintiff possessed could not have included right to cause damage or a substantial risk of damage to the public health or safety). Related to this, courts have repeatedly held that a temporary business closure does not give rise to a compensable taking when such closure is necessary to protect public health. *See Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (refusing to find taking when state temporarily closed market littered with unexploded artillery shells in order to abate public danger); *see also Devito*, 227 A.3d at 895-96 (concluding that temporary shutdown of Plaintiff businesses due to COVID-19 did not constitute regulatory taking but rather a classic example of police power). Likewise here, EO 2020-43 cannot give rise to a taking claim because Plaintiffs do not have any protected property right to operate their businesses in ways detrimental to the public welfare, particularly during an ongoing public health crisis.

**D.    Plaintiffs fail to state a plausible claim that EO 2020-43 violates the Arizona Constitution (Counts Four and Five)**

The "Equal Protection and the Due Process Clauses of the [Arizona] and federal constitutions are construed similarly." *State v. Russo*, 196 P.3d 826, 827 (Ariz. Ct. App. 2008); *see also Vong v. Aune*, 328 P.3d 1057, 1061 (Ariz. Ct. App. 2014) ("We consider [Plaintiff's] state and federal due process claims together because the respective due process clauses 'contain nearly identical language and protect the same interests.'") (internal citation

omitted); (Doc. 21 at 14.) Accordingly, Counts Four and Five fail to state a plausible claim for relief for the same reasons as Counts One and Two.

### E. Plaintiffs fail to state a plausible claim that EO 2020-43 violates their rights under the Contracts Clause (Count Six).

Article I, Section 10 of the U.S. Constitution prohibits the states from passing any law "impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Courts have made clear that the Contract Clause "does not trump the police power of a state to protect the general welfare of its citizens, a power which is 'paramount to any rights under contracts between individuals.'" *See Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 367 (2d Cir. 2006) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978)). As such, "courts must accommodate the Contract Clause with the inherent power of the state to safeguard the vital interests of its people." *Id.* (citations and internal quotation marks omitted).

A two-part test is used to determine whether laws violate the Contracts Clause. *See Sveen v. Melin*, 138 S. Ct. 1815, 1821-22 (2018). The first prong considers whether the state action has "operated as a substantial impairment of a contractual relationship." *Id.* The second prong, which only comes into play if there is a substantial impairment, considers whether there is a "significant and legitimate public purpose" behind the regulation. *See id.* at 1822. When the government is not a party to the contract (as here), courts must "properly defer to [state] judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983).

Here, Plaintiffs cannot meet either prong of the test. On the first prong, Plaintiffs fail to allege facts showing that a 30-day pause on their franchisees' ability to host gym activities represents a *substantial* impairment of Plaintiffs' contracts with its franchisees. A substantial impairment requires more than "a temporary alteration of the contractual relationship," but rather demands "a severe, permanent, and immediate change in those relationships— irrevocably and retroactively." *Schmid v. Sonoma Clean Power*, 2014 WL 12689941, at *5 (N.D. Cal. 2014) (quoting *Allied Structural Steel*, 438 U.S. at 250); *see also Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 576-77 (N.D. Cal. 2019) (dismissing Contracts Clause claim

where facts alleged did not support a substantial impairment of contract). Given the temporary nature of EO 2020-43, Plaintiffs simply cannot claim, as a matter of law, any severe, immediate *or permanent* change to existing contractual relationships.

Even assuming EO 2020-43 somehow does substantially impair Plaintiffs' contracts with its franchisees, Plaintiffs cannot satisfy the second prong of a Contracts Clause claim. As discussed above, the Complaint's allegations and judicially noticeable facts make clear that EO 2020-43 serves a legitimate public purpose, *i.e.* to prevent and control the spread of a global pandemic. Indeed, "in the midst of a catastrophic global pandemic of a kind not seen for more than a century, it is difficult to imagine how [Plaintiffs'] counsel could argue that that 'the EO does not serve a legitimate public purpose' in support of plaintiffs' Contract Clause claim." Order, *Omnistone Corp. v. Cuomo*, 2:20-cv-02153-GRB-SIL, ECF No. 18, at 5 (E.D.N.Y. May 15, 2020) (considering claim that order that temporarily closed down businesses due to COVID-19).[4] Moreover, EO 2020-43 does not aim to affect any State contractual obligations. Nor does it aim to promote the interests of any particular group of people at the expense of gym owners. The Governor undeniably wields broad police power during this emergency to regulate in areas that concern public health. *See McGhee*, 2020 WL 2308479, at *4. Because the Contract Clause "does not trump the police power of a state to protect the general welfare of its citizens," Plaintiffs' Contract Clause claim must fail. *Buffalo Teachers Fed'n v. Tobe*, 464 F. 3d 362, 367 (2d Cir. 2006).

F. **Plaintiffs fail to state a plausible claim that EO 2020-43 is unconstitutionally vague (Count Seven)**

1. **Plaintiffs cannot assert a facial or as-applied vagueness claim.**

An executive order may be challenged for vagueness either "on its face" or "as applied." *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984). Plaintiffs do not identify which type they are trying to assert. Regardless, both versions fail.

---

[4] This case is available through PACER at Docket Entry #18, https://ecf.nyed.uscourts.gov/doc1/123116640538.

*First*, the Ninth Circuit only authorizes a facial review for vagueness if a statute chills conduct protected by the First Amendment. *See United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001) ("Where . . . a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment, we do not consider whether the statute is unconstitutional on its face."). Plaintiffs do not assert that EO 2020-43 "chills" any of their First Amendment activities. Nor could they—running a gym franchise does not implicate the First Amendment. Plaintiffs have no grounds to assert a facial challenge to EO 2020-43.

*Second*, an as-applied challenge is only permissible when the government actually seeks to enforce a vague statute against a person or entity and impose the associated criminal or civil penalties. *See Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1349-50 (11th Cir. 2011) (holding that a pool hall could not bring an as-applied vagueness challenge to an ordinance when it "has not been prosecuted; it has not lost its license; it has not been fined"). Here, the State has not instituted an enforcement action against Plaintiffs under EO 2020-43. Nor does any Plaintiff allege that they have been cited or are in violation of the order.

**2.     Plaintiffs cannot meet the high bar to demonstrate vagueness.**

Even if Plaintiffs could establish standing, this EO is not vague. The vagueness doctrine "does not require 'impossible standards' of clarity," *Kolender v. Lawson*, 461 U.S. 352, 361 (1983), or "mathematical certainty." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Nor can the "doctrine … be understood in a manner that prohibits governments from addressing problems that are difficult to define in objective terms." *Gammoh v. City of La Habra*, 395 F.3d 1114, 1121 (9th Cir. 2005). "A statute is vague not when it prohibits conduct according to an imprecise but comprehensible normative standard, but rather in the sense that *no standard of conduct is specified at all*." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 906 (9th Cir. 2019) (internal quotations and citation omitted; emphasis added).

Here, EO 2020-43 specifies a standard of conduct: all Gyms must pause operations until July 27, 2020. (Doc. 22-2 at 18.) Plaintiffs argue this proscription is vague because the order does not define the affected businesses. (Doc. 1 at ¶ 102.) But the lenient vagueness standard does not require such a specific definition within the order. *See United States v.*

*Cullen*, 499 F.3d 157, 163 (2d Cir. 2007) (when evaluating the void for vagueness doctrine, "an ounce of common sense is worth more than an 800-page dictionary."). The terms "[i]ndoor gyms and fitness clubs or centers" are not "esoteric or complicated terms devoid of common understanding." *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) (rejecting vagueness challenge to terms that had common-sense meaning); *see also Recreational Devs. of Phx., Inc. v. City of Phoenix*, 83 F. Supp. 2d 1072, 1087 (D. Ariz. 1999) (dismissing vagueness challenge to terms that "are either clear or are clarified when considered in context of [the challenged ordinance], other applicable ordinances, and common sense"). Individuals of common intelligence are capable of identifying what constitutes a gym or fitness center. *See United States v. Lanier,* 520 U.S. 259, 266 (1997) (vagueness doctrine applies to "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.") (internal quotations and citation omitted).

Moreover, even if the meaning of "[i]ndoor gyms and fitness clubs or centers" were ambiguous as to *other* companies, Plaintiffs cannot show that this phrase is ambiguous *as to them* or their franchisees' "fitness studios." (Doc. 1 at ¶ 91.) On this basis alone, their vagueness claim fails. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

Plaintiffs also assert they cannot tell what it means to "pause operations" or when the temporary closure period will end. (*See* Doc. 1 at ¶ 103.) The phrase "pause operations" does not involve "esoteric or complicated terms devoid of common understanding." *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014). Persons of common intelligence could easily ascertain that this phrase means that Gyms must discontinue hosting indoor exercise activities within their facilities. Additionally, EO 2020-43 directs the "pause" of operations will last at least until July 27, 2020. Taken together, the order gives fair warning as to the prohibited conduct—operation of the facilities of Plaintiffs' franchisees in Arizona until July 27, 2020.

The mere fact that the EO does not provide a definitive date of expiration beyond July 27 has no relevance to the vagueness analysis. Regulations are unconstitutionally vague "only when [they] expose[] a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 740 (1970). If EO 2020-43 is in fact extended, that extension will give fair warning as to the modified expiration date of the temporary closure order.

Moreover, EO 2020-43 explains that in order for Gyms to reopen (and thus not be subject to citation), affected businesses must undergo an attestation process. (*See* Doc. 22-2 at 18.) Plaintiffs' arguments about the ambiguity or unavailability of the reopening procedures is not only premature (the attestation form has not yet been released), but outside the scope of the void-for-vagueness doctrine because the procedures are not a proscription of conduct. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 822-823 (9th Cir. 2003) ("A statute is void for vagueness if it . . . does not define the *conduct it prohibits* with sufficient definitiveness.") (emphasis added); *Woodruff v. Dep't of Labor*, 954 F.2d 634, 642 (11th Cir. 1992) (holding that void-for-vagueness doctrine does not apply to a manual provision not regulating conduct). As such, Plaintiffs' vagueness argument fails.

**IV.   Conclusion**

Without a doubt, the COVID-19 pandemic has caused enormous hardship nationwide to individuals and businesses alike. Although EO 2020-43 subjects Gyms to such a temporary hardship, Plaintiffs cannot state a cognizable claim against Governor Ducey. The Complaint should be dismissed with prejudice.

DATED this 8th day of July, 2020.

                                              SNELL & WILMER L.L.P.

By: s/ Brett W. Johnson
Brett W. Johnson
Colin P. Ahler
Derek C. Flint
Michael A. Calvanico
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

Office of Governor Douglas A. Ducey
Anni L. Foster
1700 West Washington Street
Phoenix, Arizona 85007

*Attorneys for Defendant Douglas A. Ducey, Governor of the State of Arizona*

- 17 -

# **CERTIFICATE OF SERVICE**

I certify that on July 8, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which electronically sends a copy of same on to:

Brian A. Howie
**Quarles & Brady LLP**
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
Brian.howie@quarles.com
*Attorney for Plaintiffs*

Alex M. Weingarten
Celeste M. Brecht
Jeffrey K. Logan
Steven E. Swaney
**Venable LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
amweingarten@venable.com
cmbrecht@venable.com
jklogan@venable.com
seswaney@venable.com
*Attorneys for Plaintiffs*

 s/  Tracy Hobbs