Brian A. Howie (026021)
brian.howie@quarles.com
**QUARLES & BRADY LLP**
Firm State Bar No. 00443100
One Renaissance Square
Two N. Central Ave.
Phoenix, AZ  85004-2391
Telephone:  (602) 229-5200

Alex M. Weingarten* (CA 204410)
amweingarten@venable.com
Celeste M. Brecht* (CA 238604)
cmbrecht@venable.com
Jeffrey K. Logan (CA 136962)
jklogan@venable.com
Steven E. Swaney* (CA 221437)
seswaney@venable.com
**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone:  (310) 229-9900

*Attorneys for Plaintiffs*
Xponential Fitness LLC, AKT Fitness, LLC, Club Pilates Franchise, LLC, CycleBar Franchising, LLC, PB Franchising, LLC, Row House Franchise, LLC, Stretch Lab Franchise, LLC and Yoga Six Franchise, LLC

*Admitted Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Xponential Fitness LLC, et al., | Case No.: 2:20-cv-01310-JZB |
|---|---|
| Plaintiffs, | **REPLY TO DEFENDANT GOVERNOR DOUGLAS A. DUCEY'S RESPONSE TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| vs. | |
| The State of Arizona and Douglas A. Ducey, Governor of the State of Arizona, in his official capacity, | |
| Defendants. | |

QB\168534.00002\63905949.1

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

ARGUMENT ...............................................................................................................................2

I.    THE RECORD SHOWS THAT PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS..................................................................................................................2

    A.    Plaintiffs Are Likely to Prevail on Their Procedural Due Process Claim ......2

    B.    Plaintiffs Are Likely to Succeed on the Substantive Due Process and Equal Protection Claims ...........................................................................................6

    C.    Plaintiffs Are Likely to Succeed on the Contracts Clause Claim ...................9

II.    THE EVIDENCE SHOWS A LIKELIHOOD OF IRREPRABLE HARM TO PLAINTIFFS IF INJUNCTIVE RELIEF IS NOT GRANTED .............................10

III.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST URGED BY GOVERNOR DUCEY ARE BASED ON A FALSE PREMISE.............................11

QB\168534.00002\63905949.1

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Abbott*,
   954 F.3d 772 (5th Cir. 2020) ................................................................................... 11

*Angelotti Chiropractic, Inc. v. Baker*,
   791 F.3d 1075 (9th Cir. 2015) ............................................................................... 6, 9

*Ass'n of Jewish Camp Operators v. Cuomo*,
   __ F. Supp. 3d __, 2020 WL 3766496 (N.D.N.Y. Jul. 6, 2020) ................................... 4

*Church of Scientology Intern. v. Elmira Mission of the Church of Scientology*,
   794 F.2d 38 (2d Cir. 1986) ..................................................................................... 11

*City of Los Angeles v. County of Kern*,
   462 F.Supp.2d 1105 (C.D. Cal. 2006) .................................................................... 11

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
   527 U.S. 666 (1999) ............................................................................................. 2, 3

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*,
   459 U.S. 400 (1983) ................................................................................................ 10

*Londoner v. City and County of Denver*,
   210 U.S. 373 (1908) .................................................................................................. 4

*Montainside Fitness v. Ducey*,
   No. CV 2020-093906 (Sup. Ct. Ariz. July 6, 2020) ................................................... 5

*N. Am. Aviation Prop., Inc. v. Nat'l Transp. Safety Bd.*,
   94 F.3d 1029 (6th Cir. 1996) ..................................................................................... 4

*On Fire Christian Ctr., Inc. v. Fischer*,
   2020 WL 1820249 (W.D. Ky., Apr. 11, 2020) ........................................................ 6, 7

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) ................................................................................... 11

*Ry. Employees Dep't v. Hanson*,
   351 U.S. 225 (1956) .................................................................................................. 3

QB\168534.00002\63905949.1

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) .................................................................................... 9, 10

*Sagana v. Tenorio*,
    384 F.3d 731 (9th Cir. 2004) ....................................................................................... 1, 3

*Soranno's Gasco, Inc. v. Morgan*,
    874 F. 2d at 1316 (9th Cir. 1989) ................................................................................... 3

*Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir.1995) .............................................................................................. 10

*United States v. Fla. E. Coast Ry.*,
    410 U.S. 224 (1973) ........................................................................................................ 4

*United States v. Tropiano*,
    418 F.2d 1069 (2d Cir. 1969) ......................................................................................... 2

*Valley Medical Specialists v. Farber*,
    194 Ariz. 363 (1999) ....................................................................................................... 3

*Wedges/Ledges of Calif., Inc. v. City of Phoenix, Ariz.*,
    24 F.3d 56 (9th Cir. 1994) .............................................................................................. 3

**Statutes**

5 U.S.C. § 551 ............................................................................................................................4

QB\168534.00002\63905949.1

**INTRODUCTION**

Governor Ducey's opposition to Plaintiffs' motion for a TRO is most striking for what it does *not* say: nowhere does the Governor explain why the robust mitigation measures he already put in place for gyms operating in Arizona, which Plaintiffs and their franchisees have implemented, are insufficient to allow gyms to continue operation. Nor does the Governor adequately explain why gyms must be entirely shut down in response to the recent spike in COVID-19 cases, but other businesses with similar, or even greater, risk factors can remain open. Tellingly, the declarations supporting Governor Ducey's opposition point to only *one* purported instance of a "gym" being associated with the transmission of coronavirus—which occurred in South Korea, in an environment completely dissimilar to Plaintiffs' boutique fitness studios, many months before the implementation of physical distancing and other measures proven to reduce the risk of transmission. Beyond that, all Governor Ducey's experts can say is that exercise causes people to breathe harder, which may increase transmission by respiratory droplets—but surely Governor Ducey and ADHS staff were aware of this when they announced on May 12 that it was safe for gyms to reopen under the protocols they established, and there is nothing in the record to explain why those protocols were sufficient then but insufficient now. Simply put, there is a complete lack of data or evidence demonstrating any causal nexus between the recent rise in reported COVID-19 cases in Arizona and the reopening of gyms and fitness centers, or that current CDC and ADHS guidelines applicable to Plaintiffs' businesses are inadequate to allow for their safe operation.

Plaintiffs do not dispute that the coronavirus pandemic is a national public health emergency, or that Governor Ducey was right to take action in response to the recent surge in infections. But the Constitution still requires that the Governor articulate a plausible basis to justify the disparate treatment of gyms and the deprivation of those business owners' "right to work for a living in the common occupations of the community, [which] is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Sagana v. Tenorio*, 384 F.3d

1

1  731, 742 (9th Cir. 2004). And although Plaintiffs do not question that Governor Ducey's
2  intention in issuing E.O. 2020-43 was to protect the health of Arizonans, even well-
3  intended executive actions can violate the Constitution. Indeed, Governor Ducey's own
4  Attorney General responded to the Complaint by stating that "Plaintiffs raise serious
5  issues of first impression involving executive authority in an emergency that deserve close
6  and careful consideration by the Court," and expressly declined to defend the Governor's
7  actions. Dkt. 34 at p. 1 n.1. The record before the Court demonstrates that Plaintiffs'
8  businesses have implemented measures that exceed CDC, ADHS, and other agency
9  guidelines that are proven to mitigate the risk of transmitting coronavirus. By singling out
10 Plaintiffs' businesses for indefinite closure while allowing other businesses to remain
11 open—without any rational basis for that disparate treatment, and without establishing any
12 process for Plaintiffs to obtain authorization to reopen—Governor Ducey overstepped his
13 authority and violated Plaintiffs' due process and equal protection rights against arbitrary
14 and inequitable government action.

## ARGUMENT

### I. THE RECORD SHOWS THAT PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiffs are likely to prevail on their claims that E.O. 2020-43 is unconstitutional.

**A.  Plaintiffs Are Likely to Prevail on Their Procedural Due Process Claim**

Governor Ducey argues that Plaintiffs' procedural due process claim fails because there is no protected interest and because he was not required to afford Plaintiffs any procedural due process. The Governor is wrong.

In arguing there is no protected interest, Governor Ducey cites *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999), for the proposition that doing business, or "operating a business," is merely an activity and not a protected property interest. Opp. at 6. This argument misses the mark, however, because the "right to pursue a lawful business" is a constitutionally protected interest. *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969) ("The right to pursue a lawful

2

business … has long been recognized as a property right within the protection of the Fifth and Fourteenth Amendments to the Constitution."); *see also Ry. Employees Dep't v. Hanson*, 351 U.S. 225, 234 (1956) ("[T]he right to work, which the Court has frequently included in the concept of 'liberty' within the meaning of the Due Process Clauses may not be denied by the Congress."); *Sagana*, 384 F.3d at 742 ("It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure.") (quoting *Truax v. Raich*, 239 U.S. 33, 41 (1915)); "Moreover, corporations, as legal persons, also can assert a right to pursue an occupation." *Wedges/Ledges of Calif., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 66, n.4 (9th Cir. 1994).

Additionally, in distinguishing why the "activity of doing business" is not property, the Court in *College Savings Bank* made clear that "[t]he assets of a business (including its good will) unquestionably are property." 527 U.S. at 675. Likewise, as businesses based in California, Plaintiffs' business goodwill is recognized in the Ninth Circuit as "a property interest … the owner cannot be deprived of … without due process," *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989), and the evidence on this motion is more than sufficient to explain how the repeated shutdown of Plaintiffs' business under E.O. 2020-43 has harmed Plaintiffs' business goodwill.[1]  *See*, *e.g.*, Decl. of John Meloun (Dkt. 21-2), ¶¶ 20-22.

Governor Ducey further argues that, even if Plaintiffs' right to pursue a lawful business is a constitutionally protected interest (it clearly is), he still has the authority to close Plaintiffs' businesses indefinitely without providing *any* due process. The Governor is again incorrect. First, the Governor argues that E.O. 2020-43 is a "generally applicable order that did not target Plaintiffs specifically, . . . and [thus] procedural due process protections" were unnecessary. Opp. at 6. But E.O. 2020-43 is not "generally applicable"

---

[1] The law of Arizona likewise recognizes that business goodwill is an asset that can be transferred with the sale of the business. *See Valley Medical Specialists v. Farber*, 194 Ariz. 363, 368 (1999) ("When a business is sold, the value of that business's goodwill usually figures significantly into the purchase price.").

3

1  in a way that makes procedural due process protections unnecessary under prevailing law.
2  It is well-settled that this exception to due process applies only if the state's actions are
3  prescriptive or legislative, as opposed to adjudicative, *see United States v. Fla. E. Coast*
4  *Ry.*, 410 U.S. 224, 244-246 (1973)—and, "[b]y nature, executive orders are not
5  legislative." *Ass'n of Jewish Camp Operators v. Cuomo*, __ F. Supp. 3d __, 2020 WL
6  3766496, at *7 (N.D.N.Y. Jul. 6, 2020); *see also N. Am. Aviation Prop., Inc. v. Nat'l*
7  *Transp. Safety Bd.*, 94 F.3d 1029, 1030 (6th Cir. 1996) ("'[O]rders' are usually
8  adjudicative in nature and apply to a particular group."); 5 U.S.C. § 551
9  ("'[A]djudication' means agency process for the formulation of an order."). Here, the
10 evidence supporting Governor's Opposition makes clear that E.O. 2020-43 is
11 adjudicatory, not legislative. The Governor's own expert, Dr. Bessel, states that "*[a]ny*
12 environment that is enclosed, with poor air circulation and high density of people, is of
13 concern for the spread of this virus." Bessel Dec. ¶ 18 (emphasis added). Yet E.O. 2020-43
14 purposely targets only a "particular group," *N. Am. Aviation*, 94 F.3d at 1030, despite the
15 fact that many indoor retail establishments (such as casinos) present the same type of
16 environment Dr. Bessel identified as increasing the risk of transmission. Thus, the Governor
17 has decided that only a small segment of the business community must bear the *full* cost of
18 "Slowing the Spread of COVID-19," rather than applying that burden across all businesses
19 where similar risk factors are present. This is fundamentally an adjudicatory act that
20 deprives Plaintiffs of their right to continue the pursuit of their businesses; thus procedural
21 due process protections are required. *See Londoner v. Denver*, 210 U.S. 373, 385 (1908)
22 (there is a right to procedural due process regarding government action when a relatively
23 small number of persons was concerned, who were exceptionally affected, in each case
24 upon individual grounds).
25     Second, the Governor relies on *Sinoloa Lake* and *McGhee* for the proposition that
26 no "pre-deprivation" due process was necessary (Opp. at 7), but Plaintiffs' point is that no
27 due process was provided ***at all***—either before the Governor issued E.O. 2020-43 or after.
28 None of the cases cited by the Governor stand for the proposition that a constitutionally

4

1  protected interest can be taken without *any* due process merely because there is a health
2  emergency. And although Plaintiffs do not dispute the gravity of the current crisis, the fact
3  that COVID-19 cases have recently trended upward in Arizona does not pose the type of
4  emergency situation (such as the imminent bursting of a dam, which was the issue in
5  *Sinaloa*) requiring instantaneous government action to avoid immediate harm. Indeed, in
6  *Mountainside Fitness v. Ducey*, which the Governor also cites (Opp. at 7), the court
7  rejected the Governor's contention that he can close gyms indefinitely without any due
8  process whatsoever. *See Montainside Fitness v. Ducey*, No. CV 2020-093906 (Sup. Ct.
9  Ariz. July 6, 2020) (Dkt. 36) at 8 ("There must be real post-deprivation process. While the
10 EO does have post-deprivation process on its face, the Court is greatly concerned about
11 implementation."). Whether provided before or after the issuance of E.O. 2020-43,
12 Plaintiffs are entitled to some meaningful measure of procedural due process in
13 connection with the deprivation of their right to continue pursuing their businesses.
14       Finally, the Governor simply declares that the "attestation" provision of E.O. 2020-
15 43 is "adequate" to satisfy procedural due process without further explanation or analysis.
16 Opp. at 7. It is not surprising that the Governor makes no real attempt to explain, much
17 less defend, the "process" provided by E.O. 2020-43, because the Order's "attestation"
18 procedure is illusory. The Order's vague reference to a "form" (that is still unavailable)
19 requiring attestation of "compliance with guidance issued by ADHS" (which is still
20 unissued and undefined) does not create any actual procedure for Plaintiffs to seek to
21 reopen their businesses. Indeed, the "process" alluded to in E.O. 2020-43 raises more
22 questions than it answers regarding when and how Plaintiffs can petition for authorization
23 to reopen their businesses.
24       The inadequacy of the "attestation form," and the need for meaningful due process,
25 is highlighted by the declarations of Drs. Christ and Bessel and Ms. Rigler—that attempt
26 to justify E.O. 2020-43's application to "gyms" based on the "shar[ing] of items that
27 cannot be cleaned, sanitized, and disinfected between use," patrons' "use of multiple
28 machines," and the "high density" of patrons. Many, if not all, of the concerns about

5

1  "gyms" upon which Drs. Christ and Bessel and Ms. Rigler base their opinions are
2  inapplicable to Plaintiffs' boutique studios. *See* Dkt. 21-2, pp. 17-46, 54-85; Dkt. 21-3, pp.
3  10-79; Dkt. 21-4, pp. 10-64, 73-91, 99-156; Dkt. 33-1, pp. 9-39. Tellingly, Dr. Christ's
4  and Ms. Rigler's declarations were prepared in response to a challenge to E.O. 2020-43
5  raised by Mountainside Fitness—which operates "big box" gyms that bear almost no
6  resemblance to Plaintiffs' boutique studios in which a limited number of customers are
7  present at one time (under current COVID-19 protocols), all of whom are participating in
8  a supervised class, which facilitates enforcement of mask and social distancing rules.
9  Thus, E.O. 2020-43 lumps Plaintiffs' businesses into a category in which they do not
10 belong, based on assumptions that are inapplicable to them, without any procedure
11 through which Plaintiffs can challenge that classification. This is why the absence of any
12 meaningful form of procedural due process renders E.O. 2020-43 invalid.

13
   **B.   Plaintiffs Are Likely to Succeed on the Substantive Due Process and Equal Protection Claims**
14

15  Regardless of what procedural protections were due, Governor Ducey must
16 separately demonstrate that there is "a plausible policy reason for the classification" of
17 Plaintiffs' businesses under E.O. 2020-43, and that "the relationship of the classification
18 to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Angelotti*
19 *Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (quoting *Nordlinger v.*
20 *Hahn*, 505 U.S. 1, 11 (1992)). Governor Ducey does not—and cannot—satisfy that
21 burden, because Plaintiffs' evidence shows that E.O. 2020-43 is both "'underinclusive'
22 and 'overbroad.'" *On Fire Christian Ctr., Inc. v. Fischer*, 2020 WL 1820249, at *7 (W.D.
23 Ky., Apr. 11, 2020). The Order is "underinclusive because [it does not] prohibit a host of
24 equally dangerous (or equally harmless) activities" that the Governor is allowing to
25 continue unchecked, including all manner of retail shopping (not to mention gambling) at
26 indoor facilities where hundreds of people congregate at once. *Id*. The Order is "also
27 overbroad because. . . it appears likely that [Arizona's] interest in preventing [gym]goers
28 from spreading COVID-19 would be achieved by" continuing to adhere to the health

protocols that Governor Ducey has already mandated for gyms—and which by all accounts are working to reduce the risk of spread as much as possible. *Id*.

The Governor offers no real response to this point, and the evidence submitted falls well short of establishing a plausible reason why closing gyms (but not other businesses with similar risk factors) is not both underinclusive and overbroad. First, the Governor offers no evidence that "gyms"—much less small, boutique studios like Plaintiffs'—are even a contributing factor in the recent spike in Arizona, much less a primary cause. The reason is simple: no such evidence exists. *See* Suppl. Decl. of Kevin Winthrop, M.D. ("Suppl. Winthrop Decl.") ¶¶ 11, 21 (Exh. A). The most the Governor's experts can do is cite *one instance* of an outbreak traced to a fitness dance class workshop in South Korea, where instructors "trained intensely for 4 hours" and then dispersed to different areas of the country. Bessel Decl. ¶ 21. The circumstances of that outbreak are unlike the current situation in Arizona in many ways; most importantly, the South Korean facilities where this occurred were not adhering to the strict guidelines Plaintiffs' facilities in Arizona are following in accordance with Governor Ducey's existing mandates. The fact that the only example the Governor can provide of COVID-19 spread attributable to gyms occurred in South Korea, months before physical distancing, mandatory masking, and other measures were implemented, lays bare the lack of any plausible basis to connect the reopening of gyms to the rise in COVID-19 cases in Arizona.[2] *See* Suppl. Winthrop Decl. ¶ 27.

Nor does the Governor present evidence explaining why the existing protocols that ADHS imposed are insufficient to mitigate the risk of further spread at Plaintiffs' fitness studios. The Governor's experts note that "individuals breathe harder during exercise," and thus respiratory "droplets are able to spread at an increased rate and distance." Christ Decl. ¶ 29. But presumably the Governor and Dr. Christ were aware of the "heavy

---

[2] Dr. Bessel—who is a hospital administrator, not an epidemiologist—also references two internet articles stating that persons infected with coronavirus had visited gyms in Nebraska and Virginia. Bessel Decl. ¶¶ 22a-b. But there is *no* indication that the presence of those persons caused other gymgoers to contract COVID-19. The mere fact that infected persons visited gyms in Nebraska and Virginia is not a plausible basis to shut down every gym and fitness studio in the State of Arizona.

7

breathing" issue on May 12, when they announced that it was safe for gyms to reopen so long as ADHS guidelines were followed—and there is no evidence before the Court indicating why those measures were sufficient on May 12 but insufficient now. On the contrary, it is well established that wearing a mask effectively blocks respiratory droplets, and there is no evidence that breathing harder reduces a mask's effectiveness. Suppl. Winthrop Decl. ¶¶ 7, 8, 22; *see also id.* ¶ 6 (citing New England Journal of Medicine study using laser light scattering technology to show effectiveness of masks in containing oral fluid droplets). Dr. Christ asserts, as a pure *ipse dixit*, that masks can "dampen when exercising, reducing their prevention benefits" (Christ Decl. ¶ 31), but there is no support for that bald assertion. In fact, the science is to the contrary. Suppl. Winthrop Decl. ¶ 24.

Nor do the Governor dispute that Plaintiffs' facilities comply with—and in many instances exceed—the protocols for gyms prescribed by the CDC, ADHS, and other health agencies. *See* Suppl. Winthrop Decl. ¶¶ 11-14. Nor do the Governor or his experts dispute that those guidelines are effective in mitigating the spread of COVID-19. Indeed, Dr. Christ repeatedly cites the CDC guidelines as authoritative (*e.g.*, Christ Decl. ¶ 30). Thus, all the experts before the court agree that CDC and ADHS guidelines are grounded in science, proven effective, and are being strictly followed in Plaintiffs' facilities. *See* Suppl. Winthrop Decl. ¶¶ 12-14. Given these undisputed facts, there is no rational reason for Governor Ducey's decision to shutter Plaintiffs' businesses indefinitely.

The Governor's final fallback argument is to suggest that Plaintiffs' liability waivers, informing patrons of the risk of contracting coronavirus, somehow undercut Plaintiffs' challenge to E.O. 2020-43. Opp. at 10. But Plaintiffs have never suggested that there is *zero* risk of contracting coronavirus at their franchises; rather, Plaintiffs' argument is that their facilities present no *greater* risk for the transmission of coronavirus than other businesses that are exempt from E.O. 2020-43, and thus the Order's disparate treatment is unwarranted, unjustified, and unconstitutional.

In truth, the increase in COVID-19 cases in Arizona are likely due to myriad factors having nothing to do with people taking Pilates and yoga classes at Plaintiffs'

8

franchises, as Dr. Christ herself recognizes. *See* Christ Decl. ¶ 21 ("Since the gradual reopening, I have observed more activity among Arizonans, including large gatherings and failure to take proper physical distancing measures."); Suppl. Winthrop Decl. ¶ 20 (agreeing with Dr. Christ's "implied conclusion that the most likely cause for the spike in Arizona COVID 19 cases is non-compliance with the guidelines established by the CDC and incorporated into Arizona's reopening rules and guidelines"). Indeed, since May 13 when businesses reopened, there have been indoor political rallies (attended by the Governor personally where virtually no masks were used and social distancing was not observed), large scale protests, graduation parties, and many other group activities that involve a high risk of transmission—none of which the Governor appears to have considered as causes for the subsequent increase in infections. Suppl. Winthrop Decl. ¶ 20. Instead, Governor Ducey chose to place the blame on gyms, making Arizona one of only four states in the nation to close gyms completely. *Id*. ¶¶ 15, 20. Although rational basis review is deferential to Government Ducey's action here, it is still an important constitutional standard requiring a sufficient showing that the rationale behind shuttering gyms, but not other businesses, is not "so attenuated as to render the distinction arbitrary or irrational." *Angelotti*, 791 F.3d at 1085. The Governor's Order falls short of that standard, and thus Plaintiffs have shown they are likely to succeed on the merits of the constitutional due process and equal protection claims.

### C. Plaintiffs Are Likely to Succeed on the Contracts Clause Claim

Governor Ducey argues that Plaintiffs are not likely to prevail on their Contracts Clause claim because there is no substantial impairment of Plaintiffs' contracts with their franchisees and because E.O. 2020-43 is drawn in an "appropriate" and "reasonable" way to advance "a significant and legitimate public purpose." Opp. at 12 (citing *Sveen v. Melin*, 138 S.C.t. 1815, 1821 (2018). The Governor's argument fails in both respects.

The Governor's argument that there is no substantial impairment is contrary to the decision in *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003), that the impairment of a contract is substantial if it "deprives a private party of an important

9

right[], thwarts performance of an essential term[], defeats the expectations of the parties[], or alters a financial term[]." *Id*. at 890 (citations omitted). Under this test, the complete shutdown of Plaintiffs' businesses for an indefinite period more than qualifies as a substantial impairment.

Under the second test, once a legitimate public purpose is identified, "the next inquiry is whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Energy Reserves Group, Inc. v. Kansas Power & Light Co*., 459 U.S. 400, 412 (1983). As noted, although there is a legitimate purpose in mitigating the spread of COVID-19, Governor Ducey failed to act appropriately and reasonably in disregarding his own protocols to shutdown Plaintiffs' businesses.

## II. THE EVIDENCE SHOWS A LIKELIHOOD OF IRREPRABLE HARM TO PLAINTIFFS IF INJUNCTIVE RELIEF IS NOT GRANTED

Governor Ducey argues there is no likelihood of irreparable harm to Plaintiffs because their "sacrifice for sake of the public good" can be remedied by money damages pursuant to the Takings Clause. Opp. at 15. Of course, the State has a different point of view on the payment of money damages to Plaintiffs (*see* Dkts. 34, 35), as does Governor Ducey in the context of his pending motion to dismiss. *See* Dkt. 37 at 10:22 ("Plaintiffs' allegations of indirect harm cannot give rise to compensable takings claim."). And, in blithely urging that Plaintiffs need only take on new debt, Governor Ducey serves only to confirm the irreparable nature of Plaintiffs' "sacrifice." *See Tom Doherty Assoc., Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 38 (2d Cir.1995) ("[I]njunctive relief is appropriate … to avoid the unfairness of denying an injunction to a plaintiff on the ground that money damages are available, only to confront the plaintiff at a trial on the merits with the rule that damages must be based on more than speculation.").

Moreover, the evidence indisputably shows that the harm to Plaintiffs from the shutdown of their businesses under E.O. 2020-43 includes the loss of customers and loss of goodwill from the inability to open the businesses. The fact that Plaintiffs' franchisees

also suffer such harm does not detract from the injuries to Plaintiffs themselves as the owners of the brands that are harmed by the shutdown Order. *See Church of Scientology Intern. v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986) ("A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder."). Further, the Ninth Circuit recognizes these injuries as constituting irreparable harm because the resulting damage is difficult to calculate with reasonable certainty. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *see also City of Los Angeles v. County of Kern*, 462 F.Supp.2d 1105, 1120 (C.D. Cal. 2006) ("[T]he difficulty of quantifying losses if the business survives means RBM has demonstrated a risk of irreparable harm.").

### III.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST URGED BY GOVERNOR DUCEY ARE BASED ON A FALSE PREMISE

Governor Ducey's argument, that the balance of equities and the public interest support the upholding E.O. 2020-43, presupposes that the protocols he previously mandated for mitigating COVID-19 under Executive Order 2020-36 would not apply. But that is not so. If injunctive relief is granted, all of those protocols continue to apply to protect against the spread of COVID-19 as mandated under E.O. 2020-36. Thus, the Governor's reliance on *In re Abbott*, 954 F.3d 772 (5th Cir. 2020), is misplaced. That decision arose in the context of the initial shutdown of commerce as relating to non-essential surgeries and procedures before there was any reopening in Texas based on the implementation of its version of the COVID-19 protocols corresponding to those required under E.O. 2020-36. When these protocols are properly considered, it is clear that the balance of equities and the public interest weigh heavily in favor of enjoining E.O. 2020-43.

/ / / /

/ / / /

11

1       RESPECTFULLY SUBMITTED this 10th day of July, 2020.

**QUARLES & BRADY LLP**
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391

By */s/ Brian A. Howie*
    Brian A. Howie

Alex M. Weingarten* (CA 204410)
amweingarten@venable.com
Celeste M. Brecht* (CA 238604)
cmbrecht@venable.com
Jeffrey K. Logan* (CA 136962)
jklogan@venable.com
Steven E. Swaney* (CA 221437)
seswaney@venable.com
**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA  90067

*Attorneys for Plaintiffs*
Xponential Fitness LLC, AKT Fitness, LLC, Club Pilates Franchise, LLC, CycleBar Franchising, LLC, PB Franchising, LLC, Row House Franchise, LLC, Stretch Lab Franchise, LLC and Yoga Six Franchise, LLC

**Admitted Pro Hac Vice*

QB\168534.00002\63905949.1