**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xponential Fitness, et al., | No. CV-20-01310-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Plaintiffs are franchisors of boutique fitness studios that provide physical fitness services to consumers across North America, including Arizona, that have been temporarily closed by Defendant Arizona Governor Doug Ducey's Executive Order 2020-43, issued and effective on June 29, 2020 ("June 29, 2020 Executive Order"). Understandably, Plaintiffs seek to reopen. They claim that the June 29, 2020 Executive Order violates their rights under the United States and Arizona Constitutions, and they seek a temporary restraining order ("TRO") and preliminary injunction ("PI") to prevent Governor Ducey from enforcing the June 29, 2020 Executive Order.[1] In accordance with an expedited briefing schedule, Governor Ducey filed a Response (Doc. 39), and Plaintiffs filed a Reply (Doc. 41). The Court held a telephonic hearing[2] on Plaintiffs' Motion on July

---

[1] Defendant State of Arizona has filed a Motion to Dismiss (Doc. 34), arguing that it is immune from this suit. At the Hearing, Plaintiffs conceded that the Motion contained correct assertions of law, and therefore, they would be withdrawing their claims against Arizona. In light of Plaintiffs' representations, the Court will grant Arizona's Motion (Doc. 34).

[2] Members of the media and public were permitted an opportunity to listen to the hearing.

13, 2020, at which argument was presented (the "Hearing").

The Court's limited role of judicial review is not to assess the wisdom of the June 29, 2020 Executive Order, but rather to determine whether it violates the law. Having carefully considered the briefing submitted by the parties and the arguments presented by counsel, the Court finds that Plaintiffs are not entitled to the extraordinary remedy of injunctive relief and will therefore deny the Motion.

I.    BACKGROUND

A.    The Covid-19 Health Crisis in Arizona

Arizona, the United States, and the entire world are in the middle of an unparalleled public health emergency. The novel coronavirus, SARS–CoV–2, and the disease it causes, COVID-19, first appeared in December 2019, and has since spread to most countries in the world, including the United States. In the short time since, the virus "has thrust humankind into an unprecedented global public health crisis." *Gayle v. Meade*, 2020 WL 2086482, at *1 (S.D. Fla. Apr. 30, 2020), *order clarified*, 2020 WL 2203576 (S.D. Fla. May 2, 2020). "Experts consider this outbreak the worst public health epidemic since the influenza outbreak of 1918." *Altman v. County of Santa Clara*, 2020 WL 2850291, at *1 (N.D. Cal. June 2, 2020).

The virus "is extremely easy to transmit, can be transmitted by infected people who show no symptoms, has no cure, and the population has not developed herd immunity." *Id.* According to the Center for Disease Control ("CDC") the virus that causes COVID-19 is believed to spread mainly through close person-to-person contact via respiratory droplets. *Ibarra-Perez v. Howard*, 2020 WL 3440298, at *4 (D. Ariz. June 23, 2020). Additionally, physical activity results in more exerted breathing, which increases the output of viral respiratory droplets. (Doc. 40 at 29). Confined spaces within gyms increase the ability of individuals to breathe in these respiratory droplets, contract COVID-19, and spread COVID-19 within the community. Indeed, intense physical activity in confined spaces increases the risk of infections, and those risks increase with higher intensity exercise. (*Id.* at 30).

Additionally, it is possible to contract COVID-19 by touching a surface or object that has the virus on it.  (Doc. 40 at 7).  "The CDC recommends that to avoid exposure and transmission, individuals should maintain a physical distance of at least six feet from others, wear cloth face covers, frequently wash their hands or use hand sanitizer, and disinfect frequently touched surfaces."  *Id.*

As of the date of this order, COVID-19 has sickened at least 13,177,855 people worldwide and 3,397,069 in the United States, and has killed 574,793 people globally and 136,117 nationally.  Center for Systems Science and Engineering at Johns Hopkins Univ., *COVID-19 Dashboard*, https://gisanddata.maps.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6 (last visited July 14, 2020).  In Arizona alone, 128,114 people have been infected and 2,341 people have died.  New York Times Staff, *Arizona Coronavirus Map and Case Count*, NEW YORK TIMES, https://www.nytimes.com/interactive/2020/us/arizona-coronavirus-cases.html (last visited July 14, 2020).  Since May 13, 2020, Arizona has seen a sharp increase in the number of new COVID-19 cases reported each day, and on July 1, 2020, Arizona set a record for newly reported cases.  (Doc. 40 at 10).  As of July 8, 2020, there was no country in the world where confirmed COVID-19 cases were growing as rapidly as they were in Arizona. Jen Fifield, *Is COVID-19 spreading more rapidly in Arizona than anywhere else in the world? Here's what data shows*, AZCentral.com (July 9, 2020, 12:22 PM), https://www.azcentral.com/story/news/local/arizona-health/2020/07/09/how-arizonas-covid-19-cases-compares-rest-world/5399832002/.  Furthermore, Arizona's rate of positive COVID-19 test is 26.8%, which is the highest in country and the third highest in the world.  *Id.*

Recent data shows that the spread of COVID-19 is greatest among the demographic 20-44-year-olds.  (Doc. 40 at 29).  In the month of June, 53% of all COVID-19 cases reported in Arizona were in 20-44-year-olds.  (*Id.*)  Additionally, as of July 3, 2020, hospitals reported that 90% of intensive care beds and 85% of impatient beds in Arizona are now filled.  (*Id.*)  And these numbers, as shocking as they are, likely actually understate

1   the damage inflicted by the virus, because a lack of testing masks the true number of

2   infections and underreporting masks the true number of confirmed COVID-19 cases and

3   fatalities.

4          **B.**      **Governor Ducey's Executive Orders**

5         In response to the extraordinary challenge that containing novel coronavirus poses,

6   Governor Ducey has issued what are known as "shelter-in-place" orders.  Such orders

7   typically require non-essential businesses to close; limit individuals' ability to travel; and

8   require individuals to avoid behaviors that make transmission of the virus more likely.  The

9   purpose of such orders is to slow virus transmission as much as possible, to protect the

10  most vulnerable, and to prevent the health care system from being overwhelmed.

11        On April 29, 2020, Governor Ducey issued Executive Order 2020-33 instituting a

12  "Stay home, Stay health, Stay connected" policy to promote physical distancing, while also

13  encouraging social connectedness ("April 29, 2020 Executive Order").  (Doc. 1 ¶ 30).

14  Under the April 29, 2020 Executive Order, all businesses classified as "Essential

15  Functions" were to establish and implement social distancing and sanitation measures

16  established by the United States Department of Labor or Arizona Department of Health

17  Services ("ADHS").  In addition, effective May 8, 2020, retailers not classified as essential

18  under the April 29, 2020 Executive Order, and whose business involves the sale of goods,

19  were allowed to open, operate, and offer goods for sale to customers in their stores provided

20  they established and implemented protocols and best practices for businesses to address

21  COVID-19 as outlined in the Order.  (*Id.*)

22        On May 4, 2020, Governor Ducey issued Executive Order 2020-34 ("May 4, 2020

23  Executive Order") providing that barbers and cosmetologists may resume operations

24  effective May 8, 2020, provided they establish and implement protocols and best practices

25  for businesses to address COVID-19.  (*Id.* ¶ 31).  On May 12, 2020, Governor Ducey issued

26  Executive Order 2020-36 ("May 12, 2020 Executive Order") instituting a "Stay Healthy,

27  Return Smarter, Return Stronger" policy allowing businesses to gradually and safely open,

28  effective May 16, 2020, in compliance with federal guidelines to mitigate and prevent the

1    spread of COVID-19.  Under the May 12, 2020 Executive Order, any business operating
2    in Arizona shall develop, establish and implement policies based on guidance from the
3    CDC, Occupational Safety and Health Administration ("OSHA"), and ADHS to limit and
4    mitigate the spread of COVID-19.  The May 12, 2020 Executive Order also included
5    specific guidance for gyms and fitness centers.  Additionally, ADHS made clear that this
6    guidance could change if the trajectory of COVID-19 changed.  (Doc. 22-1 at 7).

7          On June 17, 2020, Governor Ducey issued Executive Order 2020-40 ("June 17,
8    2020 Executive Order") providing that businesses shall assist in efforts to "Contain the
9    Spread," by updating and enforcing written policies in accordance with May 12, 2020
10   Executive Order.  Governor Ducey subsequently issued the June 29, 2020 Executive Order
11   requiring that all "[i]ndoor gyms and fitness clubs or centers," among other businesses,
12   "pause operations" effective June 29, 2020, at 8:00 p.m., until at least July 27, 2020, unless
13   extended.  (Doc. 1 ¶ 36).  Under this Order, businesses closed may "receive authorization
14   to reopen" after they "submit a form as prescribed by [ADHS] that attests the entity is in
15   compliance with guidance issued by ADHS related to COVID-19 business operations."
16   (*Id.*)

17         **C.     Governor Ducey's COVID-19 Medical Experts**

18         Dr. Cara Christ, Director of ADHS, provides that on May 12, 2020, she concurred
19   with Governor Ducey's decision to issue his May 12, 2020 Executive Order, which detailed
20   a plan for the safe and progressive reopening of Arizona businesses.  (Doc. 40 at 8).  Dr.
21   Christ avers that since gyms and other businesses were allowed to reopen on May 13, 2020,
22   Arizona has seen a sharp increase in the number of new COVID-19 cases reported.  (*Id.*)
23   Additionally, Dr. Christ notes that Arizona has seen a sharp increase in the number of 20-
24   44-year-old people testing possible with that age group now representing 50 % of all newly
25   reported positive tests.  (*Id.*) In response to this data, Dr. Christ avers that she advised and
26   concurred with Governor Ducey's June 29, 2020 Executive Order, which temporarily
27   paused Arizona's reopening by closing some businesses and activities, including indoor
28   gyms and fitness clubs.  (*Id.* at 11).  Dr. Christ opines that "[i]ndoor gyms and fitness clubs

pose a uniquely dangerous environment for the spread of COVID-19. Because individuals breathe harder during exercise, droplets are able to spread at an increased rate and distance, putting others at distances in excess of the recommended six feet at risk for inhaling infected droplets and making it more likely that distance objects become contaminated by the virus." (*Id.* at 11-12). Additionally, Dr. Christ states that even if masks are worn, they "can rapidly dampen when exercising, reducing their prevention benefits." (*Id.* at 12). According to Dr. Christ, "[t]he nature of indoor gyms makes management of COVID-19 difficult given the tendency to regularly go to different areas of the gym, use multiple machines, enter and exit locker rooms/restrooms, and travel to and from water fountains throughout a visit." (*Id.*) Dr. Christ opines that "without the Governor's [June 29, 2020 Executive Order] scaling back the reopening of certain business and activities that pose a higher risk of infection, such as gyms, Arizona will face an even larger increase in COVID-19 related illnesses which will put more strain on our healthcare system." (*Id.* at 12-13). Dr. Christ further avers that "the measures contained in [the June 29, 2020 Executive Order] are necessary to address the spread of COVID-19 and limit the public health crisis caused by COVID-19[,]" and are "reasonable and narrow directives directed at those businesses which [Dr. Christ] believe[s] are critical to contain the spread and impact of COVID-19[.]" (*Id.* at 14).

Dr. Marjorie Bessel, Chief Clinical Officer at Banner Health, opines that "COVID-19 is readily transmitted from person to person in settings where social distancing cannot be maintained . . . and in indoor locations, like gyms, where ventilation may be less than ideal." (*Id.* at 19). According to Dr. Bessel, there are some industries, including gyms and fitness facilities, where social distancing is difficult and contact with the respiratory droplets of others is much more likely. (*Id.* at 24). Dr. Bessel avers that some gyms and fitness centers have taken measures to mitigate the spread of COVID-19; however, as anyone can unknowingly spread COVID-19, limiting in-person social contact, especially in those activities that are more prone to sharing bodily fluid and droplets, is currently the most effective tool for containing this virus. Furthermore, Dr. Bessel states that "[w]hile

1  mandating masks, even while exercising, will help reduce the spread of the virus, this alone
2  is not enough." (*Id.*)  Additionally, Dr. Bessel provides that even if gyms meet the ADHS
3  standards, it does not negate the fact that gyms and fitness centers are high-risk
4  environments.  Dr. Bessel opines that in her professional opinion, "temporarily closing
5  gyms is a prudent way to help mitigate the risk of furthering the spread of COVID-19 . . .
6  ." (*Id.* at 25).

7       Ms. Jessica Rigler, the Assistant Director of the Division of Public Health
8  Preparedness (the "Division") at ADHS, avers that "[g]yms and fitness clubs or centers--
9  because of the nature of their function and the demographics who patronize those
10  establishments (20-44 year olds)--pose a particular threat to Arizona's ability to combat
11  and minimize the spread of COVID-19." (*Id.* at 31).

12       **D.    Plaintiffs**

13       Plaintiffs are franchisors of boutique fitness studios.  Plaintiff Xponential Fitness
14  LLC ("Xponential"), is the curator of boutique fitness brands that operate small exercise
15  studios that provide classes such as Pilates, cycle, dance, rowing, and yoga.  (Doc. 21-2 at
16  4).  Xponential's brands include fifty studios located in Arizona.

17       Plaintiffs AKT Franchising, LLC ("AKT"), Club Pilates Franchise, LLC ("Club
18  Pilates"), CycleBar Franchising, LLC ("CycleBar"), PB Franchising, LLC ("Pure Barre"),
19  Row House Franchise, LLC ("Row House"), Stretch Lab Franchising, LLC ("Stretch
20  Lab"), and Yoga Six Franchise, LLC ("Yoga Six") are all owned by Xponential and have
21  at last one franchisee operating  in Arizona.  Plaintiffs provide that they have all expended
22  significant resources[3] to develop, establish, and implement detailed and comprehensive
23  written policies and procedures based on the guidance provided by the CDC, OSHA, and
24  ADHS for reopening gyms.  Additionally, Plaintiffs all provide that they were operating in
25  compliance with Governor Ducey's May 12, 2020 Executive Order and have all
26  subsequently closed pursuant to the June 29, 2020 Executive Order.

27

28  _____

[3] It is unclear whether Plaintiffs as the franchisor expended these resources or if it was the non-party franchisee that expended these resources.

## II.     LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted).  Thus, to obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (citations omitted).  Where, as here, the government is a party, the last two factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135.  "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." *Id*. at 24 (citations omitted).

## III.     DISCUSSION

Plaintiffs argue that the June 29, 2020 Executive Order violates the United States Constitution's due process, equal protection, takings, and contracts clauses.  Additionally, Plaintiffs contend that Order violates the Arizona Constitution's due process and equal protection clauses.  (Doc. 1).

The Court does not doubt the earnestness of Plaintiffs' desire to open their

1  businesses, generate revenue, earn a living, and employ—and as importantly, pay—others.

2  The Court further recognizes the economic and emotional hardships Governor Ducey's

3  executive orders related to COVID-19 can impose on people and businesses.  The Court is

4  not unsympathetic to Plaintiffs' plight, but, as explained below, in our constitutional

5  republic, the decisions of whether, when, and how to exercise emergency powers amidst a

6  global pandemic belong not to the unelected members of the federal judicial branch, but to

7  the elected officials of the executive branch.

8  **A.    Plaintiffs Likelihood of Succeeding on the Merits**

9  *1.    Procedural Due Process Claims*

10  The Fourteenth Amendment guarantees equal protection under the law and protects

11  individuals from government deprivation of life, liberty, and property without due process

12  of law.  U.S. Const. amend. XIV. Similar language appears in the Arizona Constitution

13  which provides that "[n]o person shall be deprived of life, liberty, or property without due

14  process of law." Ariz. Const. art. 2, § 4; *see Vong v. Aune*, 328 P.3d 1057, 1061 (Ariz. Ct.

15  App. 2014) (holding that it is proper to consider state and federal due process claims

16  together because the respective due process clauses "contain nearly identical language and

17  protect the same interests."). Thus, "[a] procedural due process claim has two distinct

18  elements: (1) a deprivation of a constitutionally protected liberty or property interest, and

19  (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood*

20  *Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998), *cert. denied*, 526 U.S. 1018 (1999).

21  In their Complaint and Motion, Plaintiffs argue that Governor Ducey's June 29,

22  2020 Executive Order deprived them of their fundamental property interest in conducting

23  lawful business activities.  (Doc. 1 ¶¶ 44-45, 47, 69; Doc. 21 at 11).  However, the general

24  right to do business has not been recognized as a constitutionally protected property right.[4]

---

25  [4] At the Hearing, Plaintiffs for the first time argued that the right to operate a business was
26  a protected liberty interest.  The Court will not consider arguments raised for the first time
   during oral argument.  However, even if the Court were to consider this new argument, the
   Court is unpersuaded that the right to operate a business is a protected liberty interest.  The
27  cases relied on by Plaintiffs, concern an *individual's* right to work, not a franchisor's right
   to have its franchisee operate its business.  (Doc. 41 at 7); *see also Ry. Emp. Dept. v.*
28  *Hanson*, 351 U.S. 225, 234 (1956) ("[T]he right to *work*, which the Court has frequently
   included in the concept of 'liberty' within the meaning of the Due Process Clauses . . .")

*Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *see also Mountainside Fitness Acquisitions, LLC v. Douglas A. Ducey*, CV2020-093916 at 6 (Ariz. Sup. Ct. July 6, 2020) ("The activity of running a business may not be a constitutionally protected property interest, at least if the government interference with the business is only temporary.").  Moreover, courts have held that in the current COVID-19 crisis, temporary closures of a business do not implicate procedure due process rights. *Talleywhacker, Inc. v. Cooper*, 2020 WL 3051207, at *12 (E.D.N.C. June 8, 2020). The Court is skeptical that federally protected property rights are at issue in this action; however, even assuming that a property interest is implicated here, Plaintiffs were not denied adequate procedural protections.

Plaintiffs argue that Governor Ducey's June 29, 2020 Executive Order violated their procedural due process because they were not provided with notice and a hearing before their franchisees' businesses were closed "indefinitely."  (Doc. 21 at 11).  However, courts have routinely held that a pre-deprivation process is not required when addressing the current COVID-19 crisis.  *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 897 (Pa. 2020) ("Under the circumstances presented here, namely the onset of the rapid spread of COVID-19 and the urgent need to act quickly to protect the citizens of the Commonwealth from sickness and death, the Governor was not in a position to provide for pre-deprivation notice and an opportunity to be heard by Petitioners . . ."); *see also Mountainside Fitness*, CV2020-093916 at 6 ("[E]ven if a temporary shut-down of a business does implicate a constitutionally protected property interest, it is clear that no pre-deprivation process is required.").  This Court agrees with these holdings and finds that Plaintiffs were not entitled to pre-deprivation process under these circumstances.

Plaintiffs further argue that they were entitled to a post-deprivation procedure. (Doc. 21 at 12-13).  Relying on *Benner v. Wolf*, 2020 WL 2564920, at *5 (M.D. Pa. May

---

(emphasis added)); *Sagana v. Tenorio*, 384 F.3d 731, 742 (9th Cir. 2004), as amended (Oct. 18, 2004) ("Restrictions on *selecting and pursuing work* are recognized by the Fourteenth Amendment's Due Process Clause.") (emphasis added).  Plaintiffs cite no authority that supports the argument that a general right for a business to operate is a protected liberty interest.

21, 2020), Governor Ducey argues that a waiver process, or post-deprivation process, is not required because the June 29, 2020 Executive Order was a "*blanket* pause on all [g]ym operations . . . ." (Doc. 39 at 9) (emphasis in original).  However, the executive order in *Benner* explicitly included a waiver process for the affected business to contest their closure.  2020 WL 2564920, at *5.  This Court need not decide whether a post-deprivation process is required, because the June 29, 2020 Executive Order includes such a process, at least on its face.

The June 29, 2020 Executive Order provides that affected businesses may submit a form to ADHS attesting that it is in compliance with guidance issued by ADHS related to COVID-19 business operations.  To date, Governor Ducey has failed to provide the affected businesses with such a form.  At the Hearing, Governor Ducey's counsel stated that the form was "almost finished" and could be expected "quite soon."  As Judge Thomason noted in *Mountainside Fitness*, the lack of timeline to make the waiver process available to affected business is suspect.  Nonetheless, the failure to make the attestation form available, at this time, does not render the post-deprivation process insufficient, particularly in light of the Governor's representations that one would be forthcoming soon. *See Mountainside Fitness*, CV2020-093916 at 6.  Accordingly, Plaintiffs have not shown that they will be likely to succeed on the merits of their procedural due process claims.

### 2.    *Substantive Due Process Claims*

There is no dispute that the rational basis test applies for Plaintiffs' substantive due process claims.[5]  Utilizing that legal framework, the Court presumes that the June 29, 2020 Executive Order is constitutional, making it incumbent upon Plaintiffs to negate "every conceivable basis which might support" it.  *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012).  This is an uphill battle for Plaintiffs.  They must disprove all possible justifications for the June 29, 2020 Executive Order regardless of whether those justifications actually motivated Governor Ducey's decision-making.  *FCC v. Beach Commc'ns, Inc*., 508 U.S. 307, 313–15 (1993) ("[B]ecause we never require a legislature

---

[5] Plaintiffs' counsel agreed that rational basis is the appropriate standard during oral argument.

to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. Thus, the absence of 'legislative facts' explaining the distinction 'on the record' has no significance in rational-basis analysis.") (citations omitted)). Under this test, Governor Ducey's action "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 315.   This is especially so in the case of a public health crisis like the one presented by COVID-19, where a governor's "latitude 'must be especially broad.'"  *S. Bay United Pentecostal Church v Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)).

Governor Ducey's June 29, 2020 Executive Order was issued after Arizona's top medical professionals familiar with the COVID-19 crisis in Arizona advised that closing gyms, and several other industries, was prudent given the sharp increase in cases.  These medical opinions satisfy the rational basis review.  *See League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 2020 WL 3468281, at *3 (6th Cir. June 24, 2020) ("The idea that heavy breathing and sweating in an enclosed space containing many shared surfaces creates conditions likely to spread the virus is a paradigmatic example of 'rational speculation' that fairly supports the Governor's treatment of indoor fitness facilities."); *see also Mountainside Fitness*, CV2020-093916 at 9 (holding that June 29, 2020 Executive Order satisfies the rational basis test because it was issued in consultation with medical professional that opinioned that fitness centers, even those currently in compliance with the guidelines, pose undue risks at this time).  Dr. Christ opined that "[b]ecause individuals breathe harder during exercise, droplets are able to spread at an increased rate and distance," thus making "[i]ndoor gyms and fitness clubs . . . a uniquely dangerous environment for the spread of COVID-19."  (*Id.*  at 11-12).  Moreover, Dr. Christ stated that even if masks are worn, they "can rapidly dampen when exercising, reducing their prevention benefits."  (*Id.* at 12).  Plaintiffs may disagree with Dr. Christ, and the other medical professionals; however, their disagreement has no place in the rational basis

framework.

Plaintiffs also argue that the closure of gyms and fitness centers that were operating in compliance with the guidance outlined in the May 12, 2020 Executive Order is inconsistent with Governor Ducey's previous position that gyms could safely operate if they met the specified guidance.  While the Court understands and sympathizes with Plaintiffs, and to some extent agrees that Governor Ducey's position regarding COVID-19 protocols for gyms appears to be inconsistent, "[c]onsistency . . . is not required to pass the rational basis test, particularly during times when the available information is constantly changing." *Mountainside Fitness*, CV2020-093916 at 9.  It is undisputed that the COVID-19 crisis in Arizona has dramatically changed since mid-May.  It is therefore unsurprising that Governor Ducey would reevaluate the businesses that were operating and the standards by which they were operating.  Dr. Christ stated that it was her opinion on May 12, 2020, that gyms could operate safely if they complied with certain policies and procedures; however, she recommended the closure of gyms in late-June because of the increase in confirmed COVID-19 cases in Arizona since mid-May, and in evaluating the types of conditions likely to spread the virus.  (Doc. 40 at 9-11).  A change in Governor Ducey's position or COVID-19 strategy is not inherently irrational; rather, it is indicative of the complex and rapidly changing pandemic that Governor Ducey, and governors[6] across the United States, are combating.

Plaintiffs' frustrations that the June 29, 2020 Executive Order does not close every business in which the virus might easily spread is also understandable; however, the Order need not be the most effective or least restrictive measure possible to attempt to stem the spread of COVID-19 to be rational.  *League of Indep. Fitness Facilities & Trainers,* 2020 WL 3468281, at *3.  It is not this Court's role to "usurp the functions of another branch of government," *Jacobson v. Massachusetts*, 197 U.S. 11, 28 (1905), by second-guessing Governor' Ducey's strategy for combating this unprecedent public health crisis.  It is "the duty of the constituted authorities primarily to keep in view the welfare, comfort, and safety

---

[6] Arizona is not the only state that has had to pause or rollback reopening plans.

of the many, and not permit the interests of the many to be subordinated to the wishes or convenience of the few." *Id*. at 29. Thus, "[e]ven if imperfect, the Governor's [June 29, 2020 Executive] Order passes muster under the rational basis test." *League of Indep. Fitness Facilities & Trainers,* 2020 WL 3468281, at *3. Accordingly, Plaintiffs are unlikely to prevail on their substantive due process claims.

### 3.   Equal Protection Claims

As with Plaintiffs' substantive due process claim, the parties agree that Plaintiffs' equal protection claim is governed by the rational basis standard of review, because no suspect classification or fundamental right is at stake. Under the rational basis standard, the Court must first ask "whether the challenged legislation has a legitimate purpose." *Jackson Water Works, Inc. v. Pub. Utilities Comm'n of State of Cal*., 793 F.2d 1090, 1094 (9th Cir. 1986). "Second, assuming a legitimate purpose, [the Court] must decide whether the challenged classification promotes that purpose." *Id*. "There need not be a tight fitting relationship between the legislative goal and the result." *Id*. (internal quotation marks omitted). "All that is needed . . . is to find that there are plausible, arguable, or conceivable reasons which may have been the basis for the distinction." *Id*. (internal quotation marks omitted).

As previously discussed, Governor Ducey's June 29, 2020 Executive Order was implemented to prevent the spread of COVID-19 and to protect the health and safety of individuals living in Arizona. This interest is legitimate. *S. Bay United Pentecostal Church*, 140 S. Ct. at 1613 ("Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'") (quoting *Jacobson*, 197 U.S. at 38); *In re Abbott*, 954 F.3d 772, 795 (5th Cir. 2020) ("[The governor's] interest in protecting public health during such a time is at its zenith.").

Having found Governor Ducey's interest to be legitimate, the Court will turn to the classification at issue. The June 29, 2020 Executive Order requires gyms, among several other industries, to pause or close until at July 27, 2020. Governor Ducey issued this Order

upon the advice of medical professionals familiar the COVID-19 crisis in Arizona, including Dr. Christ and Dr. Bessel.  Both Dr. Christ and Dr. Bessel concluded that gyms create a uniquely dangerous environment for the spread of COVID19 because exercise makes mask-wearing more difficult and less effective,[7] and individuals emit more virus-spreading respiratory droplets during exercise.  In light of these plausible reasons, the temporary closure of gyms by the June 29, 2020 Executive Order is rationally related to the legitimate interest of curbing the spread of the virus and preserving health resources.

Plaintiffs argue the classification lacks a rational basis because individuals at tattoo parlors are "screaming in pain" while receiving a tattoo and therefore, similar to exercising, likely emitting a significant amount virus-spreading respiratory droplets; nevertheless, tattoo parlors are open.  Likewise, Plaintiffs' expert,  Dr. Kevin Winthrop, opined that gyms operating in compliance with the guidance included in the May 12, 2020 Executive Order "do not present a higher risk of COVID-19 transmission than many other types of non-essential businesses (e.g. casinos, tanning salons, 'big box' stores, and tattoo parlors) that currently are free to continue operating in the state of Arizona."  (Doc. 21-5 at 9). However, Governor Ducey's June 29, 2020 Executive Order does not violate the Equal Protection Clause simply because it does not close every business where transmission is possible.  *Talleywhacker*, 2020 WL 3051207, at *10 (holding the decision close certain industries and not others does not violate the Equal Protection Clause because the governor "need[s] to consider a myriad of factors, sometimes in tension with each other, in balancing multiple public needs across the spectrum of the state economy and social fabric."); *see also S. Bay United Pentecostal Church*, 140 S. Ct. at 1613 ("The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement," not suitable for judicial second guessing).

---

[7] Plaintiffs contend that "it is well established that wearing a mask effectively blocks respiratory droplets, and there is no evidence that breathing harder reduces a mask's effectiveness."  (Doc. 41 at 12).  Plaintiffs further state that Dr. Christ's opinion that masks can dampen when exercising, reducing their prevention benefits, has "no support."  (*Id.*) The Court will, however, decline Plaintiffs' "invitation to weigh medical and scientific evidence in usurpation of the executive's role." *Talleywhacker*, 2020 WL 3051207, at *11.

1    Plaintiffs may disagree with the rationale supporting Governor Ducey's June 29,

2  2020 Executive Order; however, Governor Ducey's medical advisors have opinioned that

3  given the current COVID-19 crisis in Arizona, gyms, even those currently in compliance

4  with the guidelines, pose undue risk.   Accordingly, the temporary closure of gyms is

5  reasonable and rational.   Accordingly, there is rational support for treating gyms different

6  than other businesses, and therefore, Plaintiffs are unlikely to prevail on their equal

7  protection claim.

8                    **4.     Takings Clause Claim**

9    Plaintiffs' Fifth Amendment takings claim cannot support their request for

10  injunction relief.  *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2176 (2019)

11  ("As long as an adequate provision for obtaining just compensation exists, there is no basis

12  to enjoin the government's action effecting a taking."). "The Fifth Amendment does not

13  proscribe the taking of property; it proscribes taking without just compensation."

14  *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172,

15  194 (1985), *overruled on other grounds by Knick,* 139 S. Ct. 2162. Thus, even if the June

16  29, 2020 Executive Order did violate Plaintiffs' Fifth Amendment rights, Plaintiffs would

17  not be entitled to injunctive relief because damages are the proper remedy for a taking.  *See*

18  *Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n*, 125 F. Supp. 3d 1051, 1066

19  (D. Haw. 2015), *aff'd sub nom. Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610

20  (9th Cir. 2020).

21                    **5.     Contracts Clause Claim**

22    The Contracts Clause restricts the power of States to disrupt contractual

23  arrangements.   It provides that "[n]o state shall . . . pass any . . . Law impairing the

24  Obligation of Contracts."  U.S. Const., Art. I, § 10, cl. 1.  "Despite the sweeping terms of

25  its literal test, the Supreme Court has construed this prohibition narrowly in order to ensure

26  that local governments retain the flexibility to exercise their police powers effectively."

27  *Matsuda v. City of Honolulu*, 512 F.3d 1148, 1152 (9th Cir. 2008) (citations omitted).  To

28  determine whether a law crosses the constitutional line, courts apply a two-step test.  *Sveen*

*v. Melin*, 138 S. Ct. 1815, 1821 (2018).  The threshold issue is whether the state law has "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978).  If a substantial impairment exists, the inquiry turns to the means and ends of the legislation.  In particular, the Court has asked whether the state law is drawn in an "appropriate" and "reasonable" way to advance "a significant and legitimate public purpose." *Energy Reserves Group, Inc. v. Kansas Power & Light Co*., 459 U.S. 400, 411–412 (1983).

A substantial impairment is more than a temporary alteration of a contractual relationship; rather "it is a severe, permanent, and immediate change in" a contractual relationship.  *Schmid v. Sonoma Clean Power*, 2014 WL 12689941, at *5 (N.D. Cal. Nov. 14, 2014) (holding that there was not a substantial impairment because the contractual relationship could be restored to its original state), *aff'd*, 673 Fed. Appx. 785 (9th Cir. 2017).  As the closure of gyms pursuant to the June 29, 2020 Executive Order is temporary, the Court is skeptical that it meets the threshold requirement of substantial impairment.  Nonetheless, even assuming it is a substantial impairment, as previously discussed, the June 29, 2020 Executive Order was a reasonable way to advance a legitimate public purpose—namely, slowing the spread of COVID-19 in Arizona.  Accordingly, Plaintiffs are unlikely to prevail on their Contracts Clause claim.

### 6.     *Void-for-Vagueness Claim*

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required.").  The vagueness doctrine incorporates two related requirements—fair notice and fair enforcement.  The relevant inquiry is whether the law is "'so vague and indefinite as really to be no rule or standard at all,' or whether a person of ordinary intelligence could understand" what the law requires.  *Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015) (quoting *Boutilier v.*

1    *Immigration & Naturalization Serv*., 387 U.S. 118, 123 (1967)).  If a law "imposes neither

2    regulation of nor sanction for conduct," then "no necessity exists for guidance so that one

3    may avoid the applicability of the law."  *Boutilier*, 387 U.S. at 123.  "Courts 'apply the

4    void-for-vagueness doctrine outside of the First Amendment context only rarely.'"  *Prime*

5    *Healthcare Services, Inc. v. Harris*, 216 F. Supp. 3d 1096, 1124 (S.D. Cal. 2016) (quoting

6    *American Iron & Steel Inst. v. OSHA*, 182 F.3d 1261, 1277 (11th Cir. 1999)).

7         Plaintiffs allege the June 29, 2020 Executive Order is impermissibly vague because

8    it fails to give adequate guidance regarding its scope or duration and fails to define

9    "[i]ndoor gyms and fitness clubs or centers." (Doc. 21 at 15) (alteration in original).  The

10   Court disagrees.  Having examined the text of the June 29, 2020 Executive Order, this

11   Court is not persuaded that the public will be left to guess at the meaning of  "indoor gyms

12   and fitness clubs or centers," particularly because the meanings of "indoor," "gym,"

13   fitness," "clubs," and "centers" are easily discerned through recourse to a common

14   dictionary.  *Edge v. City of Everett*, 929 F.3d 657, 665 (9th Cir. 2019), *cert. denied sub*

15   *nom. Edge v. City of Everett, Washington*, 140 S. Ct. 1297 (2020).  In other words,

16   individuals of ordinary intelligence are capable of identifying what constitutes an "indoor

17   gym or a fitness club and center," as these are ordinary terms with a common sense

18   meaning.  *See United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014).

19        Additionally, while Plaintiffs contend that the directive to "pause operations," is

20   unclear, the Court finds that "pause operations" used in near proximity to "reopen" is

21   sufficient for a person of ordinary intelligence reading the June 29, 2020 Executive Order

22   in its entirety to be adequately informed that "pause operations" means temporary closure.

23   *Edge*, 929 F.3d at 665. The June 29, 2020 Executive Order's temporary closure of gyms,

24   including Plaintiffs' franchisees' boutique fitness studios, is not impermissibly vague.

25   Accordingly, Plaintiffs are unlikely to prevail on this claim.

26        **B.**    **Other Factors**

27        "When, as here, a party has not shown any chance of success on the merits, no

28   further determination of irreparable harm or balancing of hardships is necessary."  *Global*

*Horizons, Inc. v. United States Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007). Nonetheless, the Court will briefly address the remaining factors. Had Plaintiffs been able to establish a likelihood of success on the merits, they would also have established irreparable harm. S*ee Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

However, Plaintiffs still bear the burden of demonstrating that an injunction would be in the public interest and that the balance of equities tips in their favor. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) ("When the government is a party, [the public interest and equities] factors merge."); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009). This Court must balance the public's interest in preventing constitutional harm against the government's—and the public's—interest in controlling the spread of a dangerous virus. *See Stormans*, 586 F.3d at 1138 ("In assessing whether the plaintiffs have met [their burden to show that the balance of equities tips in their favor], the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'") (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)).

Plaintiffs argue that "the public interest weighs heavily in favor of granting the injunction so that Arizonans may enjoy the mental and physical health benefits resulting from the panoply of fitness services provided by Plaintiffs' businesses." (Doc. 21 at 20). Plaintiffs further contend that "no harm will result to the public interest in allowing Plaintiffs' businesses to operate because they are in compliance with the protocols mandated to protect the public health from COVID-19." *Id.* The Court is not persuaded.

COVID-19 is highly contagious and continues to spread at alarming rates, requiring public officials to constantly evaluate the best method by which to protect residents' safety against the economy and a myriad of other concerns. Governor Ducey has provided evidence that gyms create a uniquely dangerous environment for the spread of COVID19 because exercise makes mask-wearing more difficult and *less effective*, and individuals

emit more virus-spreading respiratory droplets during exercise.  Allowing gyms and fitness facilities to operate in Arizona, at this time, could increase the risk of transmission of COVID-19—not just for those who visit Plaintiffs' particular facilities, but for everyone in the community—therefore, the Court concludes that this case presents a situation in which "otherwise avoidable human suffering" would result from the issuance of the requested injunction.  *Stormans*, 586 F.3d at 1140.; *see also City and County of San Francisco v. U.S. Citizenship & Immigration Servs*., 408 F. Supp. 3d 1057, 1127 (N.D. Cal. 2019) (finding that public interest "in decreasing the risk of preventable contagion" weighed in favor of enjoining rule that would lead to Medicaid disenrollment and thus decreased vaccination rates).  Granting Plaintiffs the relief they seek would pose serious risks to public health.  Plaintiffs argue that their gyms should be allowed to open, despite Arizona's top medical professionals' opinion that even if gyms follow all protocol, there is still an unacceptable risk of COVID-19 infections.  The risks in doing so are too great.  The Court therefore finds that the public's interest in controlling the spread of COVID-19 outweighs its interest in preventing the constitutional violations alleged here, especially given that Plaintiffs have failed to establish a likelihood of success on the merits.  For these reasons, the balance of equities and public interest weigh against a preliminary injunction.

## IV.   CONCLUSION

In sum, Plaintiffs are not likely to succeed on the merits of their claims and the balance of the equities and public interest weigh against entry of a temporary restraining order or preliminary injunction, and therefore, Plaintiffs' Motion will be denied.  The Court deeply sympathizes with Plaintiffs, and other similar business owners, and their patrons affected by Governor Ducey's June 29, 2020 Executive Order.  "Sympathy, however, is not a relevant consideration for [this] Court."  *Mountainside Fitness Acquisitions, LLC v. Douglas A. Ducey*, CV2020-093916  (Ariz. Sup. Ct. July 6, 2020).  "Crises like COVID-19 can call for quick, decisive measures to save lives.  Yet those measures can have extreme costs—costs that often are not borne evenly. The decision to impose those costs rests with the political branches of government, in this case," Governor Ducey. *League of Indep.*

1  *Fitness Facilities & Trainers, Inc. v. Whitmer*, 2020 WL 3468281, at *3 (6th Cir. June 24,

2  2020).  For the foregoing reasons, Plaintiffs are not entitled to the "extraordinary remedy"

3  of a temporary restraining order. *See Winter*, 555 U.S. at 22.  Accordingly,

4      **IT IS ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order and

5  Preliminary Injunction (Doc. 21) is **DENIED**.

6      **IT IS FURTHER ORDERED** that Defendant State of Arizona's Motion to

7  Dismiss (Doc. 34) is **GRANTED**.  Arizona shall be dismissed as a party from this suit.

8      Dated this 14th day of July, 2020.

9

10

11  _____
    Honorable Diane J. Humetewa
12  United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28